# WHEELING.

RUFFNER, DONNALLY & Co. *v.* HEWITT, KERCHEVAL & Co.

July 15, 1874.

1. An agency may be created by express words or acts of the principal, or it may be implied from his conduct and acquiescence. The nature and extent of an agency may be implied and inferred from circumstances. A common mode of appointment of an agent is by a written request, or by implication from the recognition of the principal, or from his acquiescence.

2. An account of sales rendered by a consignee to a consignor is *prima facie* evidence of its correctness.

3. Generally, in equity, an account current rendered by one merchant to another, received and held without objection, will be deemed a stated account, and the objection to such accounts rendered, which will prevent them from being stated accounts, must be made within a reasonable time, and it lies upon the party contesting the accounts, so rendered, to prove that he made objection within a reasonable time.

4. A settled account will, generally, be deemed conclusive between the parties, unless some fraud, mistake, or omission, or inaccuracy is alleged and shown.

5. In cases of settled account a court of equity will not, generally, open the account, but will, at most, only grant liberty to surcharge and falsify, unless in cases of apparent fraud.

6. Generally, it is the right of an agent to be reimbursed all his advances, expenses, and disbursements, made in the course of his agency, on account of or for the benefit of his principal, when the advances, expenses and disbursements have been properly incurred and reasonably and in good faith paid, without any default on the part of the agent.

7. Generally, a dissolution of a partnership leaves every partner in possession of the full power (unless upon the dissolution it has been exclusively confided and delegated to some other partner or per-

1874.
June Term.

Ruffner,
Donnally & Co.,
v.
Hewitt,
Kercheval & Co.

son) to pay and collect debts due to the partnership; to apply the partnership funds and effects to the discharge of the partnership debts; to adjust and settle the unliquidated debts of the partnership; to receive any property belonging to the partnership; and to make due acquittances, discharges, receipts and acknowledgments of their acts in the premises.

8. Until the affairs of the partnership are settled, and outstanding engagements made good, the partnership must, in contemplation of law, have a continuance, so far as respects the winding up of its affairs.

9. If an agent has, without his own default, incurred losses or damages in the course of transacting the business of his agency, or in following the instructions of his principal, he will be entitled to full compensation.

10. It is, ordinarily, the duty of an agent where the business in which he is employed admits of it, or requires it, to keep an account of all his transactions on behalf of his principal, not only of his payments and disbursements, but also of his receipts; and render such accounts to his principal, at all reasonable times, without any suppression, concealment or overcharge.

11. If the agent unnecessarily exceeds his commission, or risks the property of his principal, he thereby renders himself responsible to his principal, for all losses and damage, which are the natural consequences of his act.

An appeal, by Samuel A. Miller and several persons who were members of the firm of Ruffner, Donnally & Co., on behalf of said firm, from a decree rendered by the circuit court of Kanawha county, on the 6th day of July, 1869, in a suit in chancery therein pending, wherein said Ruffner, Donnally & Co. were complainants and Hewitt, Kercheval & Co., Hewitt, Roe & Co., J. J. Roe & Co., Humphrey, Tutt & Terry, and a large number of other persons, were respondents. The names of the various firms, who were made respondents, will be found in the opinion of the Court.

The record, as printed, is very voluminous; but as the contest turned upon the settlement of various and complicated accounts, extending over a period of several years, between the complainants and respondent firms, which are investigated at length by the Court, and all the material facts stated, the Reporter deems any further statement unnecessary.

The Hon. James W. Hoge, judge of said circuit court, presided at the hearing below.

Samuel A. *Miller* and *Daniel Lamb* for the appellants.

*William S. Pope*, of Missouri, and *Nicholas Fitzhugh* for the appellees.

1874.
June Term.

Ruffner,
Donnally & Co.,
v.
Hewitt,
Kercheval & Co..

HAYMOND, PRESIDENT:

This is a suit in equity in the nature of a foreign attachment. The bill in the case was filed on the 1st Monday in April, 1859. The several firms of Hewitt, Roe & Co., Hewitt, Kercheval & Co., John J. Roe, & Co., and Humphrey, Tutt & Terry, are the principal defendants, against whom decrees are sought, by the plaintiffs, though there are other defendants, who the bill alleges have an interest; but the bill does not define or specify that interest; and there are still other defects.

I intended to preface this opinion with a full statement of the case as presented by the bill and answers,. but found that to do so is not essentially necessary, and would make the opinion unnecessarily lengthy and cumbersome..

From the case as presented by the record it appears that the plaintiffs and a few others, who are dead, but whose personal representatives are parties to this suit,. in the latter part of February, 1851, entered into a partnership under the firm name and style of Ruffner, Donnally & Co., in the county of Kanawha, then in the State of Virginia, but now in the State of West Virginia, for the purpose of buying salt, manufactured and to be manufactured, in said county, and vending the same in such markets as might be deemed expedient, in the western and southern states, and to open and keep a dry goods and grocery store in the "Kanawha Salines', in said county—the partnership to expire on the 1st day of January, 1856. In May 1851, the firm of Hewitt,

1874.
June Term.

Ruffner,
Donnally & Co.,
v.
Hewitt,
Kercheval & Co.
Roe & Co., commission merchants of St. Louis, Missouri, were appointed agents, or rather factors, of the plaintiffs, at that place, to sell at that place, and forward to country agents for sale the salt of plaintiffs, delivered to them. This appointment was made through Lewis Ruffner, one of the plaintiffs, who, at the time, was an active partner, and corresponded with Hewitt, Roe & Co., from Louisville, Kentucky, where he seems at that time to have been acting for the plaintiffs in carrying on their business, or part thereof. The firm of Hewitt, Roe & Co., was composed of James Hewitt, John J. Roe and Robert M. V. Kercheval, and no others.

The defendants Humphrey, Tutt & Terry, Robert M. V. Kercheval, James Hewitt and John J. Roe & Co., filed their answers to plaintiffs bill. The answers are lengthy and specific in character, and deny any indebtedness or liability to plaintiffs, by any or either of them, by reason of the matters alleged in the bill, and in fact it is claimed by Kercheval in his answer that the firm of Ruffner, Donnally & Co., are justly indebted to Hewitt, Kercheval & Co., in a sum and for causes hereinafter named; and Humphrey, Tutt & Terry that Ruffner, Donnally & Co., are indebted to them on account of their agency as factors of Ruffner, Donnally & Co., in a large sum of money, for balance of money advanced and paid by them to and for the use of Ruffner, Donnally & Co.

No other defendants appear to have answered the bill.

Humphrey, Tutt & Terry and Hewitt, Kercheval & Co., filed demurrers to the bill, but the demurrers were overruled by the circuit court of Kanawha county, on the 25th day of June, 1859.

It does not appear by the record that replications of any description were filed by plaintiffs to the answers of the defendants, but it does appear that both plaintiffs and the defendants, who answered, took and filed depositions in the suit, as though a general replication had been filed to each of the answers, and the court seems

to have decided the suit upon its merits, as though general replications to the answers were filed. And in fact the counsel in the court below seem to have considered and argued the suit before the circuit court as though general replications to the answers had been filed. Under these circumstances, I deem it proper that the suit should be considered and determined here as though the record showed that general replications were filed to the answers.

At the circuit court held for said county on the 18th day of August, 1859, that court heard the cause on the bill and exhibits, the answers of James Hewitt, R. M. V. Kercheval, Humphrey, Tutt & Terry, and the affidavit of Charles Hedrick, and the proceedings theretofore had in the cause, and without undertaking to settle any principles in the cause, decreed that an account be taken before master commissioner Alexander T. Laidley, to ascertain the state of accounts between Ruffner, Donnally & Co., Hewitt, Roe & Co., Hewitt, Kercheval & Co., J. J. Roe &. Co., (properly John J. Roe & Co.,) and Humphrey, Tutt & Terry, respectively, arising out of the matter set forth in the bill, and other pleadings, and the proofs that should be offered in the cause, and any other matters which the commissioner should think pertinent, and the parties, or any or either of them, should request, and report his proceedings in the premises to the court.

Afterwards commissioner Laidley made his report to the court to which numerous exceptions were filed by plaintiffs and Hewitt, Roe & Co., Hewitt, Kercheval & Co., John J. Roe & Co. and Humphrey, Tutt & Terry; and on the 6th of July, 1869, the suit was heard by the court upon the papers theretofore read, and proceedings had therein, the depositions of witnesses, and other papers filed in the suit, the reports and accounts of commissioner Laidley and the papers and other evidence filed therewith, the exception of Hewitt, Roe & Co., Hewitt,

1874.
June Term.

Ruffner,
Donnally & Co.,
v.
Hewitt,
Kercheval & Co.

1874.
June Term.

Ruffner,
Donnally & Co.,
v.
Hewitt,
Kercheval & Co.

Kercheval & Co., John J. Roe & Co. and Humphrey, Tutt & Terry, and also the exceptions of plaintiffs thereto, and the court sustained the exceptions to the report of Commissioner Laidley filed by Hewitt, Roe & Co., Hewitt, Kercheval & Co. and John J. Roe & Co. And the Commissioner having referred the matter of the record of Houseman, Smith & Co., against Hewitt, Kercheval & Co. (filed as evidence before him) to the court for its judgment, the court was of opinion that the amount of the recovery shown by the said record against Hewitt, Kercheval & Co. is a proper charge against the plaintiffs and decreed that the plaintiffs pay to the defendant, Robert M. V. Kercheval, surviving partner of Hewitt, Kercheval & Co., $1,348.21, being the principal and interest of the recovery aforesaid due, that day, and also the further sum of $161.50, being principal and interest of the amount paid by them for defending the same ; also the costs of Hewitt, Kercheval & Co. incurred by them about their defence in this suit and that plaintiffs bill be dismissed as to them ; and also that the suit be dismissed as to the defendants Hewitt, Roe & Co. and the defendants John J. Roe & Co. and that the defendant Robert M. V. Kercheval, surviving partner of Hewitt, Roe & Co. and John J. Roe & Henry J. Moore constituting the firm of John J. Roe & Co., recover against the plaintiffs their costs by them, severally, in their defence in the suit expended. And the court overruled the exceptions of the plaintiffs so far as they apply to the controversy with the defendants, Humphrey, Tutt & Terry, but sustained the exceptions of Humphrey, Tutt & Terry, to the said report. And the circuit court not being advised what decree should be made as between the plaintiffs and defendants Humphrey, Tutt & Terry, ordered that the cause, as between the plaintiffs and Humphrey, Tutt & Terry, be referred to Wm. H. Hogeman, a special commissioner, and required him to state and report the accounts as between plaintiffs and Humphrey, Tutt & Terry, upon this basis, viz: "That he allow the plain-

1874.
June Term.

Ruffner,
Donnally & Co.,
v.
Hewitt,
Kercheval & Co.

tiffs the proceeds of the sales of the salt transferred to Humphrey, Tutt & Terry by John J. Roe & Co., for and on account of plaintiffs and the proceeds of all collections made by them of the country agents having salt of plaintiffs in their hands, and also the proceeds of collections on bills receivable in the hands of Humphrey, Tutt & Terry belonging to plaintiffs and transferred to Humphrey, Tutt & Terry, by said John J. Roe & Co., for and on account of plaintiffs and that he allow Humphrey, Tutt & Terry the amount specified in the bills drawn by plaintiffs, by their agent John B. Smith, on Humphrey, Tutt & Terry, and accepted and paid by them for the accomodation of plaintiffs; and also all just expenses, charges and commissions for the sale, and relating to the disposition and sale of said salt, and the collection of said bills receivable, and other claims; and that he report the same, and any other or further matter in the premises that any or either of the parties may require, or said commissioner may himself deem pertinent and proper, to a future term of the court. From this decree, Ruffner, Donnally & Co. appealed and perfected their appeal on the 2d day of July, 1870.

No question has been made before this Court as to the correctness of the action of the of the circuit court in overruling the demurrers filed to the bill. None of the defendants in their arguments, made or filed in this Court, question that action; and I deem it unnecessary under the circumstances and view I take of the case, to consider further the action of the circuit court in relation to the demurrer. I will proceed at once to the consideration of the question arising upon the decree of the 6th of July, 1869.

The firm of Hewitt, Roe & Co. was dissolved about the 1st day of August, 1854, by John J. Roe, one of the partners, withdrawing from the partnership, of which fact Ruffner, Donnally & Co. then, or about that time, were duly and fully notified. On the dissolution of the firm and partnership of Hewitt, Roe & Co., the firm of

1874.
June Term.

Ruffner,
Donnally & Co.,
v.
Hewitt,
Kercheval & Co.

Hewitt, Kercheval & Co. was formed, composed of James Hewitt and Robert M. V. Kercheval, two of the former firm of Hewitt, Roe & Co. No other person or persons were connected with the firm of Hewitt, Kercheval & Co. At the time of the dissolution of the firm of Hewitt, Roe & Co., and at the time Ruffner, Donnally & Co., had notice thereof, they were also notified of the formation of the new firm of Hewitt, Kercheval & Co. as commission merchants at St. Louis. The firm of John J. Roe & Co. was composed of John J. Roe and Henry J. Moore, and was formed the 1st of January, 1856; and they were also commission merchants in St. Louis. The firm of Humphrey, Tutt & Terry were commission merchants in St. Louis the first of the year 1857, and perhaps before; but it is not necessary to inquire when this firm commenced business. It was composed of George D. Humphrey, Thomas E. Tutt, Lucius H. Terry and Moses D. Broadwell, and none other; and they continued business at St. Louis until, perhaps, the institution of this suit, and afterwards. The firm of Hewitt, Roe & Co. continued to be the agents or factors of the plaintiffs until its dissolution the on 1st of August, 1854, after which time the firm of Hewitt, Kercheval & Co. became, and continued to be, the agents or the factors of plaintiffs, for the sale of salt and forwarding of salt to country agents until the 22d day of December, 1856, at which time, by an arrangement made by Lewis Ruffner, one of the plaintiffs and sanctioned by John B. Smith, the general agent of Ruffner, Donnally & Co., whose office and place of business was at Louisville Kentucky. Hewitt, Kercheval & Co. ceased to be agents or factors of Ruffner, Donnally & Co., and the salt they then had on hand belonging to Ruffner, Donnally & Co., and the salt that Hewitt, Kercheval & Co. had forwarded to country agents, not wholly accounted for, and belonging to Ruffner, Donnally & Co., and all bills and other evidences of debt belonging to Ruffner, Donnally & Co. in the hands of Hewitt, Kercheval & Co., and the salt placed in the hands of coun-

try agents for sale for Ruffner, Donnally & Co. by Hewitt, Roe & Co., before their dissolution, unsold and unaccounted for, were turned over to and delivered by Hewitt, Kercheval & Co. to the firm of John J. Roe & Co. for sale, collection, settlement, &c., as the agents and factors of Ruffner, Donnally & Co.; and when this was done, the firm of Hewitt, Kercheval & Co dissolved John J. Roe & Co. acted as the agents and factors of Ruffner, Donnally & Co., in the premises, under the arrangement aforesaid, until a short time after the middle of January, 1857, which was about one month, when John J. Roe & Co., by an arrangement made by said Lewis Ruffner, and sanctioned by said John B. Smith, agent as aforesaid, turned over and delivered to Humphrey, Tutt & Terry, as agents and factors of Ruffner, Donnally & Co., all the salt of plaintiffs which they then had on hand, and also all the salt of Ruffner, Donnally & Co., placed in the hands of country agents by Hewitt, Kercheval & Co., then unsold, and all the bills, notes or other evidences of debt then in their hands belonging to plaintiffs, except such as related to the salt forwarded to country agents by Hewitt, Roe & Co., and which had been collected and accounted for, and Humphrey, Tutt & Terry received the same for sale, collection, &c.

Hewitt, Roe & Co., up to the 1st of August, 1854, rendered to plaintiffs, regularly and generally, monthly reports of the amount of barrels of salt received by them, the amount of barrels of salt sold by them, the amount forwarded to country agents, the amount of their charges for commissions on sales and for forwarding, and also rendered, regularly, to Ruffner, Donnally & Co., accounts current between them and Ruffner, Donnally & Co., showing, among other things, their charges and expenditures for Ruffner, Donnally & Co., for storage, shedcooperage, drayage, &c., in fact, for every charge against them which is rejected by the commissioner in his report.

At the time of the dissolution of the firm of Hewitt,

75

1874.
June Term.

Ruffner,
Donnally & Co.,
v.
Hewitt,
Kercheval & Co.
Roe & Co., as shown by their account current in the record, rendered July 31, 1854, there was in their hands in St. Louis, four thousand eight hundred and sixty-three barrels of salt, which was turned over by them to Hewitt, Kercheval & Co., with which Hewitt, Kercheval & Co. charged themselves and accounted to Ruffner, Donnally & Co., in their report of sales for August, 1854. On the 16th of January, 1855, Hewitt, Roe & Co., rendered to Ruffner, Donnally & Co., another account current, showing that, at that date, there was a balance due Ruffner, Donnally & Co., on moneys received by them of $2,135.75, but this was not a final account current. This account current is made up of a number of items of debit and credit. At the time of the dissolution of Hewitt, Roe & Co., there was a large amount of money owing on sales made by them, which had not then been realized, as well as several thousands of barrels of salt forwarded by them to country agents for sale; and Hewitt, Kercheval & Co., being, in some respects, successors to Hewitt, Roe & Co., and interested as members of the late firm of Hewitt, Kercheval & Co., in closing out its business, after the dissolution of the firm of Hewitt, Roe & Co., attended somewhat to the business of Hewitt, Roe & Co., and forwarded some, if not all, of the accounts current of Hewitt, Roe & Co., after July, 1854. It appears by a letter of Ruffner, Donnally & Co., written at Louisville, and dated the 18th of July, 1855, that Ruffner, Donnally & Co., acknowledged to Hewitt, Kercheval & Co., their favor covering statement of Hewitt, Roe & Co.'s collections, and their account current to the first of July, 1855, and Hewitt, Kercheval & Co., in their account current, rendered to Ruffner, Donnally & Co., about the 1st of July, 1855, extending from the 16th day of January, 1855, to the 1st day of July, 1855, inclusive, charge themselves with and give Ruffner, Donnally & Co. credit for $32,069.50 by Hewitt, Roe & Co., for this amount transferred. So far as any paper or proof in the cause shows, this last amount

embraced and covered the entire amount of moneys or. bills, or other evidences of debt of plaintiffs in the hands of Hewitt, Roe & Co., which had been collected on the 1st of July, 1855, and for this sum Hewitt, Kercheval & Co., rendered full account and satisfaction to Ruffner, Donnally & Co., as is shown by their accounts current, rendered in 1855 and 1856. In the letter of Ruffner, Donnally & Co., to Hewitt, Kercheval & Co., dated the 15th of July, 1855, before referred to, Ruffner, Donnally & Co., say: "Your favor 13th covering statement Hewitt, Roe & Co.'s (clearly meaning Hewitt, Roe & Co.'s) collections, and their account current to 1st instant, your sales account and account current to 1st instant, was received on yesterday. We have entered all these and previous accounts on our books, so as to correspond with yours."

From anything disclosed by the record, the credit of $32,069.50, given Ruffner, Donnally & Co., by Hewitt, Kercheval & Co., aforesaid, closed out all matters between Hewitt, Roe & Co., to the 1st of July, 1855, except salt in the hands of country agents, which had not then been collected, and the proceeds accounted for, and some notes or bills.

It appears that on the 1st day of May, 1854, there were in the hands of country agents, unsold, twenty-one thousand one hundred and thirty barrels of salt of Ruffner, Donnally & Co. This salt had previously been shipped by Hewitt Roe & Co., to country agents for sale. After the 1st day of May, 1854, and before the 1st of August, 1854, Hewitt, Roe & Co., shipped to country agents for sale one thousand five hundred and four barrels of salt, making in the hands of country agents on the 1st day of August, 1854, twenty-two thousand six hundred and thirty-four barrels. By the account of sales rendered by Hewitt, Roe & Co., No. 20, K., January 23, 1855, three thousand one hundred and eighty-four barrels of this amount was accounted for; and also by account, No. 21, K., July 1st, 1855,

1874.
June Term.

Ruffner,
-Donnally & Co.,
v.
Hewitt,
Kercheval & Co.

eighteen thousand five hundred and sixty-six barrels were accounted for; and also by account No. 23, K., April 30th, 1857, six thousand and thirty barrels were accounted for—together making twenty thousand seven hundred and forty-nine barrels, leaving one thousand eight hundred and eighty-five barrels. But of the twenty thousand seven hundred and forty-nine barrels, two thousand nine hundred and sixty-nine barrels were only partly accounted for by account No. 23, K— $4,881,95, being the sum accounted for on the two thousand nine-hundred and sixty-nine barrels, No. 59, K., No. 27, K., and No. 20, K., show the country agents to whom the twenty-two thousand six hundred and thirty-four barrels were shipped for sale. Of the two thousand nine hundred and sixty-nine barrels partly accounted for, five hundred were shipped to H. Cattermole and this five hundred barrels was accounted for in full as shown by paper No. 19, K., leaving two thousand four hundred and sixty-nine, and the residue of this two thousand four hundred and sixty-nine not otherwise accounted for is shown by paper No. 23, K., and the memorandum statement of account of Ruffner Donnally & Co., and John J. Roe & Co.

By account No. 21, H., dated December 23, 1855, it will be seen that Hewitt, Kercheval & Co., show that they received in cash from Walker & Kellogg, Peoria, Illinois, in full for one thousand five hundred and fifty barrels of Kanawha salt, $5,005,01, which was for salt shipped by Hewitt, Roe & Co., before the 1st of August, 1854, and is also a part of the twenty-two thousand six hundred and thirty-four barrels above named. This last named amount of money is charged to Hewitt, Kercheval & Co., and by them accounted for to Ruffner, Donnally & Co.; Hewitt, Kercheval & Co., also charge themselves with $742, September 22, 1855, and credit Ruffner, Donnally & Co., therewith, by transfer from Hewitt, Roe & Co. This $742, covers some two hundred and thirty barrels more. These fifteen hundred and fif-

ty, and two hundred and thirty barrels, Hewitt, Roe & Co., have not hereinbefore had credit for out of the twenty-two thousand six hundred and thirty-four barrels aforesaid, which, when credited to them still further reduces the amount of barrels shipped by Hewitt, Roe & Co., not before accounted for. The papers and figures before referred to, show clearly, it seems to me, that the amount of barrels of salt shipped by Hewitt Roe & Co., to country agents, not paid and settled for by them cannot exceed one thousand two hundred and eighty barrels, and they went into the hands of John J. Roe & Co.; and John J. Roe & Co., in said paper before referred to, report them to Ruffner, Donnally & Co., as having in their hands to collect, and in fact the commissioner has charged them in full to John J. Roe & Co., in his account against them.

But in addition to this, John B. Smith, the agent of Ruffner, Donnally & Co., upon consideration, negotiation and correspondence on the subject, with John J. Roe & Co., and after receiving all the reports of Hewitt, Roe & Co., of their transactions as the agents and factors of Ruffner, Donnally & Co., and with the full concurrence of plaintiff Ruffner, in consideration of the payment of the sum of $2,000, paid to him for Ruffner, Donnally & Co., by John J. Roe & Co., settled in full all the unsettled claims of Ruffner, Donnally & Co., against them and against Hewitt, Roe & Co.; and in consideration of the payment of the $2,000, aforesaid, the said John B. Smith as agent as aforesaid, made and delivered to John J. Roe & Co., a receipt in these words, viz: "Received, Louisville, Oct., 1857, of John J. Roe & Co., two thousand dollars (to be applied in payment of an acceptance of their draft, due the 15th inst.,) which amount is in full settlement of all claims against them and aganist the late firm of Hewitt, Roe & Co., and we hereby relinquish and transfer to them all notes, accounts, salt held by country agents, and all evidences of indebtedness to us, or to them, for our account growing out of previous transactions with them

1874.
June Term.

Ruffner,
Donnally & Co.,
v.
Hewitt,
Kercheval & Co.

1874.
June Term.

Ruffner,
Donnally & Co.,
v.
Hewitt,
Korcheval & Co.

as our agents for the — Kanawha salt, agreeably to their proposition made to us in their letter of the 9th inst."

[Signed.]          "RUFFNER, DONNALLY & Co.,

By JOHN B. SMITH, Attorney."

This receipt was executed on the reception of the $2,000, and it was enclosed in a letter written from Louisville, Nov. 13, 1857, by said Smith, as agent as aforesaid, to John J. Roe & Co., at St. Louis, in which he says to John J. Roe & Co., "we are sorry to say a short time since a very large fire near us caused us to move our books and papers, and some were lost. The account of J. J. Roe & Co., and Hewitt, Roe & Co., stood open upon our books. Our book keeper had them in a bundle and had not made his entries, as our Mr. Ruffner told him he expected to make this arrangement, and have them all closed up at once. We now must ask the favor of Mr. Cochran to give us a copy of J. J. Roe & Co's account against Ruffner, Donnally & Co., also of Hewitt, Roe & Co., against same, and we promise not to let them go out of our hands until they are entered, and both accounts of Roe & Co., and H. R. & Co., are closed and squared up. Give us the entries necessary to square up our ledger and the salt accounts. We are very sorry to trouble you for these accounts, as they have been rendered, but hope the unfortunate way in which we lost them a sufficient apology."     "Your friends,"

[Signed.]          RUFFNER, DONNALLY & Co.,

JOHN B. SMITH.

This letter and receipt is found on pages one hundred and seventy and one hundred and seventy-one of the printed record. A letter from plaintiff Ruffner to J. J. Roe & Co., at St. Louis dated 16th October, 1857, showing that the settlement was made and receipt executed, with the knowledge and sanction of said Ruffner, is found on pages one hundred and sixty-nine and one hundred and seventy of printed record. The deposition of said John B. Smith was taken in this cause by Ruffner, Donnally & Co., and he says, on cross-examination by Hum-

phrey Tutt & Terry, on page two hundred and six of the printed record. "I have acted as the agent of Ruffner, Donnally & Co.; my agency commenced in January, ·1854; it embraced the district below the Falls of Ohio, including Louisville, St. Louis, and Nashville, and it has continued up to the present time." After this statement by Smith he is asked these further questions, found on pages two hundred and six and two hundred and seven of the printed record. "Have you a written power of attorney conferring the appointment of agent on you; if so you are required to file it." Answer. "I have such a power of attorney, and file it with this deposition marked 'John B. Smith, power of attorney.' Have all your acts under that power of attorney, as agent of Ruffner, Donnally & Co., been recognized heretofore up to the present date, by that firm? Answer. They have. Did you direct or sanction the transfer of the salt, and other effects of Ruffner, Donnally & Co., in January, 1857, from John J. Roe & Co., to Humphrey, Tutt & Terry? Answer. I did." Again on page two hundred and nine of the printed record, said Smith is asked these questions by same : "How much money was raised by you and collected by you during the year 1856 for Ruffner, Donnally & Co.? Answer. About five hundred thousand dollars. How was the greater part of that amount raised? Answer. By bills drawn on salt in the hands of their different agents. Could you have protected the credit of Ruffner, Donnally & Co., or met their liabilities without drawing or negotiating bills during the year 1856, or early part of 1857? Answer. I could not." On page two hundred and nine of the printed record, said Smith also, says : "that on the 1st day of January, 1857, the liabilities of Ruffner, Donnally & Co., at the Louisville agency was $85,200.00." On page two hundred and twelve of the printed record, said Smith is asked this question by Ruffner, Donnally & Co's., counsel : "Who had the sole direction of the salt of Ruffner, Donnally & Co., in St. Louis in the hands of Hewitt, Kercheval &

1874.
June Term.

Ruffner,
Donnally & Co.
v.
Hewitt,
Kercheval & Co.

Co., in the year 1856 ? Answer, I had." ' On page two hundred and twenty of the printed record, said Smith is asked this question on cross-examination. "Was not the agency of Ruffner, Donnally & Co., at Louisville, the chief agency for their business west and north-west of Cincinnati; and were not the books and papers for that concern kept at Louisville for all that region, and was not their house at Louisville the only one with which the agents at St. Louis corresponded? Answer, It was; the books and papers were kept here for all that region and their house (Louisville, Ky.,) was the only one with which the agents at St. Louis corresponded." On page two hundred and seven of the printed record, said Smith says, "he rendered accounts to Ruffner, Donnally & Co., each quarter." On pages two hundred and eighteen and two hundred and nineteen, Smith, on cross-examination, is asked these questions: "Did not J. J. Roe & Co., and Hewitt, Roe & Co., settle with Ruffner, Donnally & Co., through you in October, 1857, for all the business that had been in their hands and was not that settlement satisfactory to you; look at the paper I hand you marked M," (which is the receipt aforesaid) "filed with the answer of Roe in this cause and state what you know about it; and who signed it?" Answer, "J. J. Roe & Co., had seven thousand four hundred and five barrels of salt transferred to them, it being the balance of Hewitt, Roe & Co's., salt which was settled for; the paper alluded to and now shown me I signed and I knew the same to be correct." And afterwards on page two hundred and nineteen of the printed record, Smith in speaking of said seven thousand four hundred and five barrels of salt says: "They were the same Hewitt, Kercheval & Co., transferred to J. J. Roe & Co.; in 1854 Hewitt, Roe & Co., dissolved; Hewitt, Kercheval & Co., were their successors; in December, 1856 Hewitt, Kercheval & Co., transferred the salt of Hewitt, Kercheval & Co., and Hewitt, Roe & Co., to John J. Roe & Co., and when J. J. Roe & Co., transferred to Humphrey, Tutt & Terry

they retained the salt of Hewitt, Roe & Co., and rendered their accounts for same." In his last answer in his deposition on page two hundred twenty-one of the printed record, said Smith says: "The account of Hewitt, Roe & Co., and Hewitt, Kercheval & Co., are kept in the name of Hewitt, Roe & Co., on the books of Ruffner, Donnally & Co.; when Hewitt, Roe & Co., dissolved Hewitt, Kercheval & Co., succeeded them; the accounts of Hewitt, Kercheval & Co., were regularly carried on under the name of Hewitt, Roe & Co., and their accounts have never been separated; the seven thousand four hundred and five barrels of salt was all Hewitt, Roe & Co., had; that has been closed and paid for by J. J. Roe & Co."

1874.
June Term.

Ruffner,
Donnally & Co.,
v.
Hewitt,
Kercheval & Co.

The power of attorney to John B. Smith filed with his deposition is dated the 16th day of January, 1854, and, among other things, it authorizes him to sign the name of Ruffner, Donnally & Co., to all accounts, receipts &c. and to make negotiable notes, bills and other securities in the name of said firm to be used for their purposes and to endorse the name of the firm on all such notes, bills and sureties, &c.

The notice of dissolution of the firm of Ruffner, Donnally & Co. as published in the Louisville Journal on the 26th day of January, 1856, is as follows: "The copartnership of Ruffner, Donnally & Co. expired by limitation the first of this month. John B. Smith is authorized to use the name of the firm in liquidation."

The accounts current of Hewitt, Kercheval & Co., rendered to Ruffner, Donnally & Co. at different times through the year 1856, taken in connection with other evidence, show that it was the habit of Smith, as the agent of Ruffner, Donnally &'Co. to draw and sign drafts &c., on them, in the name of Ruffner, Donnally & Co., through the year 1856, for advancements, &c., and to act for Ruffner, Donnally & Co. and as their agent in all respects after the expiration of the year 1855, as before except as to the forwarding of salt.

1874.
June Term.

Ruffner,
Donnally & Co.,
v.
Hewitt,
Kercheval & Co.

The original contract between Hewitt, Roe & Co. and Ruffner, Donnally & Co., as to commissions was, as it appears to me, twenty cents per barrel, on all salt taken from levee and placed in store—Ruffner, Donnally & Co., to furnish house for storage, except guarantee on sales; on all sales from levee thirteen cents per barrel with a like exception ; on all salt forwarded to county agents from the levee direct, three cents per barrel, and drayage and cooperage on salt forwarded to be an additional charge. I also am of opinion that according to the true meaning and spirit of the contract, the twenty cents and thirteen cents commissions on sales should be considered the charge only where the salt was delivered on the levee in reasonably good condition as to cooperage, &c. ; but if it was necessary on account of the bad condition of the salt as to cooperage, &c., when delivered, that Hewitt, Roe & Co., should expend money about the cooperage thereof, to put it in a condition to secure it from waste, and make it merchantable in barrels, the money so expended should be paid additional; and so of other expenses necessarily incurred for extraordinary purposes to protect and save the salt from distruction or waste while at levees.

. I am unable to determine very satisfactorily from exhibit A filed with Roe's answer, being a letter from Hewitt, Roe & Co. to Ruffner, Donnally & Co., dated the 15th of April, 1851, and exhibit B filed with same answer, being a letter from plaintiff, Lewis Ruffner, to Hewitt, Roe & Co., dated the 6th of May, 1851, what compensation Hewitt, Roe & Co. were to receive for collecting from country agents or whether they were to collect at all under the original contract—for Ruffner in his letter says the guarantee is not at this time expected, but sales on time must have reference to the unquestionable solvency of parties. It is not as yet decided whether the Company may not employ a collecting agent." This matter does not appear to have been clearly agreed on at the time of the contract. But this is not very material as

the contract was soon changed by the parties so as to allow Hewitt, Roe & Co., thirteen cents for forwarding from levee to country agents—The only change it can see that was made in the original contract was in substituting thirteen cents in lieu of three cents, and this thirteen cents included, perhaps, though not clearly, ordinary collections from country agents. I think it clear that there was no guaranty or warranty, as to sales on time or salt shipped to country agents. After a careful examination of the charges for commission as shown by the monthly reports of sales and forwarding made by Hewitt, Roe & Co. to Ruffner, Donnally & Co. and their accounts current, and considering all the evidence, and circumstances bearing on the case, and giving them their proper legal effect, and weight, I can not determine that Hewitt, Roe & Co. charged Ruffner, Donnally & Co., excessive or erroneous commissions or drayage. It is true that some of the accounts or returns show charges of seven cents per barrel extra for drayage of salt from levee to yard or place of storage, but on scrutinizing the accounts and returns closely, it will be seen, generally, that where the seven cents per barrel is charged for drayage from levee to yard or place of storage, thirteen cents per barrel only is charged for commission for selling the same, which makes the aggregate charge per barrel for the salt sold at yard or place of storage, twenty cents the contract price. I am clearly of the opinion from the whole case that the charges of Hewitt, Roe & Co. for salt shed, are proper, and so, as to cooperage. The evidence clearly shows that much of the salt was delivered at levee in bad condition as to cooperage.

I think there is sufficient in the record to show that Ruffner, Donnally & Co., assented to and acquiesced in the charges of Hewitt, Roe & Co., for services of special agent in collecting, at five times, in the months of April, October and November, 1852, and May, 1854. These charges of Hewitt, Roe & Co., which I have been considering, were all communicated and returned by Hew-

1874.
June Term.

Ruffner,
Donnally & Co.,
v.
Hewitt,
Kercheval & Co.

itt, Roe & Co., to Ruffner, Donnally & Co, in their re-
ports of sales and accounts current, at or near the time
they were incurred and made, without objection at the
time or until this suit was brought some six years sub-
sequent; and were adopted and admitted as proper by
Ruffner, Donnally & Co's, agents, and in fact settled as
proper by Ruffner, Donnally & Co.

I will now proceed to ascertain the law applicable to
this case as between Hewitt, Roe & Co., and Ruffner,
Donnally & Co., and in many respects as applicable to
the acts of John B. Smith, as the agent of Ruffner,
Donnally & Co., after the expiration of the year, 1855,
and also of plaintiff Ruffner, and the legal weight and
effect to be given to the reports of sale and accounts cur-
rent made and returned to Ruffner, Donnally & Co.
Ruffner, Donnally & Co., were salt merchants as well as
merchants otherwise—their residence and place of buy-
ing salt was Kanawha Co., Va.; Hewitt, Roe & Co.,
were commission merchants doing business in a different
state and at considerable distance from Virginia.  Hew-
itt, Roe & Co., in 1851, became the agents or factors of
Ruffner, Donnally & Co., in St. Louis, as hereinbefore
stated.

A factor is commonly said to be an agent employed to
sell goods or merchandise consigned or delivered to him
by or for his principal, for a compensation commonly
called factorage or commission; and when for additional
compensation, in case of sale, he undertakes to guaranty
to his principal the payment of the debt due by the
buyer, he is said to receive *del credere* commission.  A
factor is called a home factor when he resides in the
same state or country with his principal; and he is called
a foreign factor when he resides in a different state or
country.  Story on Agency, section 33 and cases there
cited.  An agent may ordinarily be appointed by parol,
in the broad sense of that term at the common law;
that is by a verbal declaration, in writing not under seal

or by acts and implications. An agency may be created by express words or acts of the principal, or it may be implied from his conduct and acquiescence. So the nature and extent of the authority of an agent may be implied or inferred from the circumstances. ·Same author section 15. The most usual· mode of appointment of an agent is by an unwritten request, or by implication, from the recognition of the principal or from his acquicsence in the acts of the agent. Same author section 54. If an agent has, by a deviation from his orders, or by any other misconduct or omission of duty, become responsible to his principal for damages, he will be discharged therefrom by the ratification of his acts or omissions, by the principal, if made with full knowledge of all the facts and circumstances. A ratification, when fairly made, will have the same effect as an original authority has, to bind the principal, not only in regard to the agent himself, but in regard to third persons. The ratification relates back to the inception of the transaction, and has a complete retroactive efficacy. Same author, secs. 413, 244. The principal cannot, of his own mere authority, ratify a transaction in part and repudiate it as to the rest. And the general rule seems to be that where a ratification is established as to part, it operates as a ratification of the whole of that particular transaction of the agent. It is not necessary that there should be any positive or direct confirmation. And for this purpose the acts and conduct of the principal are construed liberally in favor of the agent. Long acquiescence without objection, and even silence of the principal will in many cases amount to a conclusive presumption of the ratification of an unauthorized act; especially where such acquiesence is otherwise not to be accounted for; or such silence is either contrary to the duty of the principal, or it has a tendency to mislead the agent. Thus if an agent without authority should compromise a debt of his principal, who after knowledge of the fact should make no objection, but acquiesced for a length of time in the act, he would be held bound by it.

1874.
June Term.

Ruffner,
Donnally & Co.,
v.
Hewitt,
Kercheval & Co.

1874.
June Term.

Ruffner,
Donnally & Co.,
v.
Hewitt,
Kercheval & Co.

When an agency actually exists the mere acquiescence of the principal may well give rise to the presumption of an intentional ratification of the act. Same author, sections two hundred and fifty and two hundred and fifty-five. In respect to silence, whether it operates as a presumptive proof of ratification may essentially depend upon the particular relations between the parties, and the habits of business, and the usages of trade. In the ordinary course of business between merchants and their correspondents, it is understood to be the duty of the one party, receiving a letter from the other, to answer the same within a reasonable time; and if he does not, it is presumed that he admits the propriety of the acts of his correspondent, and confirms and adopts them. This principle seems now, in favor of commerce, to be universally acted upon. And therefore, if the principal, having received information, by a letter, from his agent, of his acts, touching the business of his principal, does not, within a reasonable time, express his dissent to the agent, he is deemed to approve his acts, and his silence amounts to a ratification of them. In the case of *Mertens v. Nottebohms*, 4 Gratt., 163, it was decided that "An account of sales rendered by a consignee to his consignor is *prima facie* evidence of its correctness." In the case of *Townes v. Birchett*, 12 Leigh, 196, Judge Allen, in his opinion, says, "Where merchants deal with each other, and accounts current are rendered, the party receiving and not objecting, deprives the other of the opportunity of declining to deal with him, as not advantageous. He has a right to presume from long acquiescence, that his rates and mode of charging are satisfactory, and continues to deal upon that presumption." In the case last cited, this is a part of the syllabus, thereof: "The rule of courts of equity, that an account current rendered by one party to another, received and held without complaint or objection, shall be deemed a stated account, considered. It seems the rule is not confined to accounts rendered by merchant to merchant, of mutual dealings

between them as merchants, much less to accounts rendered by merchants abroad to merchants at home; that objections to such accounts rendered, which will prevent them from being stated accounts, must be made within a reasonable time; and that it lies upon the party contesting the accounts so rendered, to prove that he made objection within a reasonable time: the rule is founded on the acquiescence of the party." In the case of *Mertens v. Nottebohms*, 4 Gratt., Judge Cabell says: "The efficacy of a stated account between merchant and merchant, is founded on the supposed acquiescence in its justice on the part of him to whom it is rendered." Judge Story, in his Eq. Juris., vol. 1, sec. 526, says: "But in order to make an account a stated account, it is not necessary that it should be signed by the parties. It is sufficient, if it has been examined and accepted by both parties. And this acceptance need not be express; but may be implied from circumstances. Between merchants at home, an account, which has been presented, and no objection made thereto after the lapse of several posts, is treated, under ordinary circumstances, as being, by acquiescence, a stated account. Between merchants in different countries, a rule, founded in similar considerations, prevails. If an account has been transmitted from the one to the other, and no objection is made, after several opportunities of writing have occurred, it is treated as an acquiescence in the correctness of the account transmitted; and therefore it is deemed a stated account. In truth, in each case, the rule admits or rather requires, the same general exposition. It is, that an account rendered shall be deemed an account stated, from the presumed acquiescence of the parties, unless an objection is made thereto within a reasonable time. That reasonable time is to be judged of in ordinary cases, by the habits of business at home and abroad; and the usual course is required to be followed, unless there are special circumstances to vary it, or to excuse a departure from it." And in the succeeding section he says:

1871.
June Term.

Ruffner,
Donnally & Co.,
v.
Hewitt,
Kercheval & Co

1874.
June Term.

Ruffner,
Donnally & Co.,
v.
Hewitt,
Kercheval & Co.

"Upon like grounds, *a fortiori*, a settled account will be deemed conclusive between the parties, unless some fraud, mistake, omission, or inaccuracy is shown. For it would be most mischievous to allow settled accounts between the parties, especially when vouchers have been delivered up or destroyed, to be unravelled, unless for urgent reasons, and under circumstances of plain error, which ought to be corrected. And, in cases of settled account the court will not generally open the account; but will, at most, only grant liberty to surcharge and falsify, unless in cases of apparent fraud." In the case of *Stoughton v. Lynch*, 2 Johns. Ch., (N. Y.,) 209 it was held that "a party cannot surcharge or falsify an account, unless on the ground of mistake or error distinctly charged." In *Consequa v. Fanning*, 3 Johns. Ch., (N. Y.,) 595 and 596, it was held, that "an order of reference for an account before a master, must be founded on the pleadings and proofs, and cannot be made more extensive than the allegations and proofs of the parties." In 1 Phillips on Ev., with Cowen and Hill's notes, 445, it is stated that "if an account has been sent to a party, and kept by him for a length of time without making any objection, it will, in ordinary matters of business, among merchants, raise an inference that the correctness of the account is admitted by the party receiving it. And where an account was shown to a party, who raised an objection to one item, but made no remark with respect to the rest, it was held to be evidence of an account stated, as to those items to which no objection was made. *Chisman v. Count*, 2 Man and Grang., 307 : "An account stated, or settled, is a mere admission that the account is correct. It is not an estoppel. The account is still open to impeachment for mistakes or errors. Its effect is to establish, *prima facie*, the accuracy of the items without other proof, and the party seeking to impeach it is bound to show, affirmatively, the mistake or error alleged. But the parties are never precluded from giving evidence to impeach the account, unless the case is brought within

the principles of an *estoppel in pais*, or of an obligatory agreement between the parties; as, for instance, when, upon a settlement, mutual compromises are made. Opinion of Selden, J. 18 N. Y., 292.

1871.
June Term.

Ruffner,
Donnally & Co.,
v.
Hewitt,
Kercheval & Co.

It is the right of an agent to be re-imbursed all his advances, expenses and disbursments made in the course of his agency, on account of or for the benefit of his principal. Hence, all the incidental charges and expenses incurred for warehouse room, duties, freight, salvage, repairs, journeys and other acts done to preserve the property of the principal and to enable the agent to accomplish the objects of the principal, are to be fully paid for by the latter. But this liability of the principal proceeds upon the ground, that the advances, expenses and disbursments have been properly incurred, and reasonably and in good faith paid, without any default on the part of the agent. Story on Agency, section 336.

I think it is clear from the whole case that John B. Smith was not only the agent of Ruffner, Donnally & Co., to the close of 1865, but that he continued to be their agent up to the bringing of this suit, and that Ruffner, Donnally & Co., ratified and confirmed all his acts in the premises, as well as authorized them, and that it cannot, reasonably or justly, be held otherwise, upon the law and evidence in the cause. Smith was the witness of Ruffner, Donnally & Co., and his evidence, a part of which, only, I have recited, proves, I think, beyond doubt, that he had the direction and control of the salt and business of Ruffner, Donnally & Co., in St. Louis; that during the years 1856 and 1857, he collected and raised from the agents of Ruffner, Donnally & Co., in the shape of advancements and payments, at least a half million of dollars, by bills, drafts, &c., drawn, endorsed and accepted in their firm name by him and applied the money to their use and relief; and that they were cognizant of his acts and mode of doing business

77

1874.
June Term.

Ruffner,
Donnally & Co.,
v.
Hewitt,
Kercheval & Co.

and authorized and ratified these acts, and, among others, the settlement and adjustment of the accounts and liabilities of Hewitt, Roe & Co., as well as John J. Roe & Co. The most of his acts in the premises seem to have been done under the eye and with the knowledge and sanction of the plaintiff, Lewis Ruffner, who was one of the firm of Ruffner, Donnally & Co., and especially so, of this settlement and adjustment. "Where notice of the dissolution is proved, the plaintiff may rebut it by evidence of the subsequent conduct and declarations of the defendants, tending to induce the world to suppose that the partnership still subsisted; as by proof that they subsequently interfered in the management of the business, or allowed their names to be used, or in any way authorized the parties acting in the concern to make use of their names and credit." Gow on Partnership, 3rd Am. Ed., 198. In Story on Partnership, section 328 it is said: "Hence it is now the admitted doctrine of the common law, that although the dissolution of the partnership disables any one of the partners from contracting new debts, or buying or selling or pledging goods, on account of the firm in the course of the former trade thereof; yet, nevertheless, it leaves every partner in possession of the full power, (unless, indeed upon the dissolution it has been exclusively confided and delegated to some other partner or person) to pay and collect debts due of the partnership; to apply the partnership funds and effects to the discharge of the partnership debts; to adjust and settle the unliquidated debts of the partnership; to receive any property belonging to the partnership; and to make due acquittances, discharges, receipts and acknowledgements of their acts in the premises. For all these acts, if done *bona fide*, are for the advancement and consummation of the great objects and duties of the partners, upon the dissolution, *to wind up the whole part-* nership concerns, and to divide the surplus, if any, among them, after all debts and charges are extinguish-

ed." Collyer on Partnership, section 546. "Thus it appears that a dissolution is in some respects prospective only." Collyer on Partnership, section 546. In *Brown v. Higginbotham & Co.*, 5 Leigh, 583, it was decided that "until the affairs of the partnership are settled, and outstanding engagements made good, the partnership must, in contemplation of law, have a continuance, so far as respects the winding up of its affairs." It was further held and determined, in this last case, that P. & B. being partners and P. being the agent of H. & Co., and having paid debts of the partnership of P. & B., out of the funds of H. & Co., B., as well as P., is bound to refund the money to H. & Co., and this, though such payment was made by P., after dissolution of the partnership. Judge Tucker, who delivered the unanimous opinion of the court in the case, said: "Both these debts were due either to Mrs. Crawford and the overseer, or to Higginbotham & Co.; and as Higginbotham & Co., paid them by direction of one of the firm of Brown & Paull, though after its dissolution, it cannot be regarded as an officious payment. For until the affairs of a partnership are settled, and outstanding engagements are made good, the partnership must, in legal contemplation, have a continuance, so far at least as respects winding them up. Gow, 312, [287;] 15 Ves. (Jr.) Ch., 226–7; 16 Ves. (Jr.) Ch., 57; 1 Swanst. Ch., 480."

It was competent for Ruffner, Donnally & Co., in this case, to show by evidence that the accounts between them and Hewitt, Roe & Co., have not been stated or settled. This, I think, they have clearly failed to do. But on the contrary, the evidence proves that the accounts were not only stated, but settled, adjusted and satisfied. It was also competent for Ruffner, Donnally & Co., by evidence, to impeach the settled account, by showing fraud, mistake or error in so far as substantially alleged in the bill. But no notice, whatever, is taken of the settlement in the bill, and consequently no fraud, mistake or error therein is alleged. On this subject, the bill sim-

1874.
June Term.

Ruffner,
Donnally & Co.,
v.
Hewitt,
Kercheval & Co.

1874.
June Term.

Ruffner,
Donnally & Co.,
v.
Hewitt,
Kercheval & Co.

ply alleges "that Hewitt, Roe & Co., and Hewitt, Kercheval & Co. have, in their returns of sales of salt, made charges against your orators which are erroneous, and in violation of their contract aforesaid, a list of which are herewith filed, marked 'O C;' that there are other errors and improper charges, which they are not at this time prepared to present by special items, but so soon as it can be done, will be presented by a statement in writing, and filed in the papers of the cause." Plaintiffs never assigned additional errors in the returns in writing, by amended bill or otherwise, properly, so defendants might have notice and be put on their guard, so as to answer and make defense, though the largest charges made by commissioner in his report contained are not mentioned in the paper "O C." Plaintiffs must have known of the settlement or adjustment when they filed their bill, but they have not alleged in the bill that it was procured by fraud, or attempted to surcharge or falsify it, by alleging in the bill that there was mistake or error therein, and pointing the same out therein, and asking that the same be corrected. When there is a settlement of accounts shown, we have seen that, generally, this is necessary in equity. In cases of settled accounts, the court will not generally open the accounts; but will, at most, only grant liberty to surcharge and falsify, unless in cases of apparent fraud. I don't think there is apparent fraud here. And neither fraud, mistake or error in either the account or settlement is satisfactorily proven. In fact Ruffner, Donnally & Co. have offered but little evidence, and all their allegations are denied in the answers made under oath, and the answers of the members of the firm of Hewitt, Roe & Co. deny all the material allegations of the bill as to errors in the accounts under the contract, &c.; and the evidence adduced and filed by them, I think, substantially sustains the answers in this respect. For these reasons I think there was no error in the decree of the circuit court in sustaining the exceptions of Hewitt, Roe & Co.,

to the commissioner's report, and dismissing the cause as to Hewitt, Roe & Co.

1874.
June Term.

Ruffner,
Donnally & Co.,
v.
Hewitt,
Kercheval & Co.

The firm of Hewitt, Kercheval & Co. was a separate and distinct firm from that of Hewitt, Roe & Co. They commenced business about the 1st of August, 1854, and at the dissolution of Hewitt, Roe & Co., Hewitt, Kercheval & Co., upon the formation of their firm, took charge of Ruffner, Donnally & Co.'s salt business in St. Louis, upon the same terms and contract of Hewitt, Roe & Co. This rate of compensation continued until about the 15th day of January, 1855, by which time they had closed out all the salt of Ruffner, Donnally & Co., received by them, being about six thousand four hundred and four barrels, and rendered an account of sales, with an account current therefor. They then informed Ruffner, Donnally & Co., that they could not, and would not, longer receive and dispose of their salt in St. Louis, unless their compensation was increased. The amount demanded and agreed on was, I think, clearly, from the evidence and circumstances shown, twenty cents for sales from levee, twenty cents and drayage for forwarding and collecting · from levee and twenty-five cents for sales from store— Ruffner, Donnally & Co., to pay storage—and in all other respects similar to the former arrangement. This I think is manifest from the correspondence upon the subject, and the acts of the parties under the arrangement afterwards and throughout. The correspondence on this subject commences on page seventy-one and on page seventy-seven of printed record. Ruffner, Donnally & Co., through their Mr. Ruffner, endeavored and insisted that Hewitt, Kercheval & Co., should agree to less compensation, but they declined and insisted on surrendering the agency, unless the compensation then demanded by them was conceded; and Ruffner, Donnally & Co. did concede it, and in the correspondence admitted that the former compensation was low. Hewitt, Kercheval & Co. continued to act as the agents and factors of Ruffner, Don-

1874.
June Term.

Ruffner,
Donnally & Co.,
v.
Hewitt,
Kercheval & Co.

nally & Co. until about the 23d day of December, 1856, during which time they received from Ruffner, Donnally & Co., at St. Louis, many thousand barrels of salt, all of which they sold and forwarded to country agents except about six thousand seven hundred barrels, which they then delivered and turned over to John J. Roe & Co., commission merchants of St. Louis, as their successors in the factorage business of Ruffner, Donnally & Co., under an arrangement then and there made by said Lewis Ruffner, Hewitt, Kercheval & Co. and John J. Roe & Co. all of which was sanctioned and confirmed by John B. Smith, the said agent of Ruffner, Donnally & Co., and by him fully recognized.

Under the last named arrangement and in accordance therewith Hewitt, Kercheval & Co., not only turned over to John J. Roe & Co., the six thousand and seven hundred barrels of Ruffner, Donnally & Co's salt then on hand, but they also transferred to said Roe & Co bills receivable of Ruffner, Donnally & Co. received by them upon sales of salt to the amount of $17,151.17 and also eight thousand five hundred and fifty-nine barrels of salt shipped by them to country agents, which had not then been fully accounted for, and at once rendered to Ruffner, Donnally & Co. their final account current showing that Ruffner, Donnally & Co. were indebted to Hewitt, Kercheval & Co., in a balance of $23,769.08. Ruffner, Donnally & Co., by their said agent, by letter dated the 27th of December, 1856, acknowledged the receipt of the account. See printed record, 144. It appears that Hewitt, Kercheval & Co., during their entire agency, rendered, about monthly, to Ruffner, Donnally & Co., accounts of their monthly sales, and in each account they state their commissions under the different contracts. They also rendered to Ruffner, Donnally & Co., accounts current, frequently, in each year, in which, among the other items, they state their commissions, the amount paid for drayage and cooperage, for rent of yards, for labor in and about protecting and saving Ruffner, Don-

nally & Co.'s salt at levee, and amount paid to agents
and otherwise, for Ruffner, Donnally & Co. and charge
them therein therewith; and the final account rendered
is of the same character and is explicit.    The first ac-
counts they rendered were for the month of August,
1854, in which they show they received from Hewitt,
Roe & Co. four thousand eight hundred and sixty-three
barrels and per "Stella Blanch" one thousand five hun-
dred and forty-one barrels making in the aggregate six
thousand four hundred and four barrels of which they
sold three thousand four hundred and forty-nine barrels
and forwarded two hundred and five barrels, and they
charged Ruffner, Donnally & Co. with drayage on nine
hundred and seventy-one barrels at yard amounting in
the aggregate to five thousand eight hundred and seven-
ty-five barrels which is less than seven cents per barrel and
to labor repiling salt at levee $12, and cooperage on one
thousand five hundred and forty-one barrels received by
"Stella Blanch" thirteen cents commission, per barrel, on
sales $448.37.    This account was forwarded to Ruffner,
Donnally & Co., on the 8th September, 1854, and on the
19th Ruffner, Donnally & Co., by L. Ruffner, one of the
firm, acknowledged its receipt with an apology for not
replying sooner, and no objection or exception whatever
is made to any of the charges or part of the accounts
whatever.    They rendered monthly accounts of sales for
September, October and November, 1854, in each of
which they state their commissions, and the receipt
thereof is promptly acknowledged and stated to be right
or satisfactory.

In November Hewitt, Kercheval & Co., sold all the
salt they had on hand, consequently made no sales in De-
cember.

On the 16th of January, 1855, they rendered to Ruff-
ner, Donnally & Co., an account current of their matters
to that date in which all their charges are stated and no
exception or objection was made or taken to it.    In their
account and report for February, 1855, they charge Ruff-

1874.
June Term.

Ruffner,
Donnally & Co.,
v.
Hewitt,
Kercheval & Co.

ner, Donnally & Co., with $40.40 for lumber for dunnage and for $300, paid Lindell for quarter of rent ending 18th February, 1855. They also report twenty-four barrels used for refilling the amount sold and their commission on the 12th of April, 1855, they forwarded their return of sales by letter for March charging twenty cents per barrel on one hundred and forty-four barrels sold and twenty-five cents on five hundred barrels sold in yard. They also stated in each of these reports the amount of salt received in each month. Ruffner, Donnally & Co's., letter, per said J. B. Smith, dated 17th April acknowledged receipt of Hewitt, Kercheval & Co's., letter dated 12th and no objection or exceptions are made to any of the charges—They also made a similar return for April, dated 30th of April, and no objections made ; and also a similar return for May and no objections. The accounts for April and May seem to have been forwarded on the 8th of June, and their receipt is acknowledged 12th of June. The account for April charges for cooperage for salt received on "Winslow," "Golden Gate," "Thos. Swann," and "Baltimore," altogether amounting to $83.95 and $6, drayage. The account for May contains charge for cooperage on salt per "Mediator" "Susquehanna" "Seventy-Six" "Return" "Stella Blanch"—amounting together to $128.72. Ruffner, Donnally & Co., in acknowledging receipt make some complaint in this letter as to some of the cooperage being high especially of that on the "Swann's" shipment, but there is no denial of the right of Hewitt, Kercheval & Co., to charge for necessary cooperage ; but in fact the contrary. The "Stella Blanch" and "Return" belonged to Ruffner, Donnally & Co. For the month of June Hewitt, Kercheval & Co., returned an account of sales and account of expenses which were forwarded the 18th of July. In the expense account there are charges for rent, for wood for dunnage ; for cooperage on salt delivered by "Stella Blanch" amounting to $44.91 and for rolling salt from river $39.25. The receipt of these accounts with account

1874.
June Term.

Ruffner,
Donnally & Co.,
v.
Hewitt,
Kercheval & Co.

current to 1st July is acknowledged by Ruffner, Donnally & Co., by letter dated 18th of July, in which no objection is made to any charge. On the contrary the letter acknowledging receipt says: "We have entered all these and previous accounts on our books, so as to correspond with yours." Accounts of sales were also rendered for July, August and September with commissions at the rate of twenty-five cents per barrel on sales, and declared by Ruffner, Donnally & Co., in the letters acknowledging receipt to be right. For the month of October, 1855, Hewitt, Kercheval & Co., on the 6th November, forwarded an account of sales with commission, twenty-five cents, and also an expense account in which drayage is charged on fifteen hundred barrels of salt to boat $105.00 and twenty-five cents commission per barrel for forwarding, amounting to $175. This account of sales is acknowledged to be received and to be correct and entered. This fifteen hundred barrels was evidently forwarded from yard and not levee. On the 2nd of April, 1856, Hewitt, Kercheval & Co., rendered an account current from 1st July, 1855 to 1st April, 1856, in which there are various charges for rent, commission &c., and the receipt of it is acknowledged by Ruffner, Donnally & Co., per John B. Smith, by letter, dated April 5, 1856, in which no objection is made for any overcharge of commission or drayage. Some inquiry is made about some other matters which were promptly explained by letter dated 9th April. Hewitt, Kercheval & Co., also returned an account current from 1st April, 1856 to October, of which no complaint or objection appears to have been made. On the 4th November, 1856, Hewitt, Kercheval & Co., made return for October and in their letter to Ruffner, Donnally & Co., enclosing it they say : "We are having Messrs. Ruffner, Donnally & Co's., salt put in order ; it is a bad job, and we trust in future that you will send your correspondents here better cooperage, and allow them to keep it under cover." To

78

1874.
June Term.

Ruffner,
Donnally & Co.,
v.
Hewitt,
Kercheval & Co.

which J. B. Smith replies 7th November, 1856 acknowledging receipt of letter of 4th and says: "We hope you and our Mr. Ruffner will be able to fall on some plan to work off Ruffner, Donnally & Co's., salt. Owing to its condition it will hardly keep if suffered to lay over another season—would prefer taking less price." And then Hewitt, Kercheval & Co., rendered a final account current from 1st October, 1856 to 22d December, 1856, inclusive, before referred to. In the letter of Ruffner, Donnally & Co., acknowledging the receipt of final accounts, no objection or exception is taken to any part or charge therein, except an explanation is asked concerning two items, to-wit: in relation to a charge for drayage on the salt in the yard turned over to Roe & Co., and the charge of ½ per cent. on $10,000 to Bank of Missouri, $50.00. This letter was written by said John B. Smith, and among other things it says: "The cooperage bill is awful, but we expect you had a hard time of it." On the 31st of December, 1856, Samuel C. Cochran, the clerk of Hewitt, Kercheval & Co., addressed a letter to Ruffner, Donnally & Co., explaining the two items in the account about which the enquiry was made, and I think the explanation reasonable and satisfactory. In his letter of explanation, Cochran, speaking for Hewitt, Kercheval & Co., says: "In relation to the charge for drayage and labor on six thousand seven hundred barrels of salt turned over to John J. Roe & Co., when making up your account, I suggested to Mr. Kercheval the idea of making the charge to John J. Roe & Co. He replied that it should be made to your account, and that John J. Roe & Co., in making up account of sales would charge commissions, twenty-five cents per barrel, less than the drayage. The charge ½ per cent. on $10,000, allowed Bank of Missouri, was an exchange which they had to take of the Bank in order to get the bills drawn on you discounted at bank rates. They could have bought exchange on New York, outside, at par, but had they sold these bills on you outside, it would have been at a

1874.
June Term.

Ruffner,
Donnally & Co.,
v.
Hewitt,
Kercheval & Co.

much greater discount than in Bank." In the said letter of Ruffner, Donnally & Co., they do not claim, as I understand it, that Hewitt, Kercheval & Co., were not entitled to receive the drayage, but they suggest that it would not be proper for them to pay it, and then pay Roe & Co., full commission of twenty-five cents for sales. I think it is clearly proven by Cochran, that the arrangement and understanding between the parties, at the time, of the transfer to John J. Roe & Co., was, that Roe & Co., were to charge twenty-five cents per barrel for the sale of that salt, less the drayage, and Roe & Co., in pursuance of that arrangement, did only charge Ruffner, Donnally & Co., seventeen cents per barrel on so much of that salt as they sold as may be seen by their report of the sale of forty barrels, which was all they sold before the agency was transferred from them to Humphrey, Tutt & Terry; and Cochran further proves, in same connection, as part of said arrangement and transfer, that John J. Roe & Co., were to charge no commissions for collections from country agents, while the agency remained in their hands.

It does not appear that any answer was sent to Cochran's letter of explanation. But afterwards on the the 12th day of January, 1857, and after the letter of Cochran must have been received, the said John B. Smith gave or sent to said Ruffner, who was going or was sent to St. Louis to see John J. Roe & Co., among perhaps others, a letter of instructions. This letter is directed to Lewis Ruffner, Esq., and the material part of it is in these words, viz: "J. J. Roe & Co. have to pay for Ruffner, Donnally & Co., as per Kercheval's balance $23,750 maturing as follows: March 4, $5,000; do. March 8, $2,-500; do. March 11, $1,250; do. March 13, $2,500; do. March 18, $2,500; do. March 21, $2,500; do. March 22, $2,500; do. April 4, $2,500; do. April 8, $2,500; (aggregating) $23,750.   *   *   We have drawn on J. J. Roe & Co. at 4 m. d., in December, for $10,000. We have written them to send authority for 15,000 at 4 m.

1874.
June Term.

Ruffner,
Donnally & Co.,
v.
Hewitt,
Kercheval & Co.
d., for January. We will want for February 4 m. d., at least $15,000, and $15,000 for December and February. If they mature before, in funds, we can easily, if necessary, use letters of credit at 4 m. d. at their maturity, and send proceeds to J. J. Roe & Co. in exchange for checks on St. Louis. We prefer negotiating here, as it can be done cheaper and on longer time. You will please make the arrangements above mentioned for the months of March and February, and if January authority has not been sent, send it at once. You will please have an understanding that we can get these amounts as wanted each month. You will please urge them to close off Ruffner, Donnally & Co.'s salt in the city in spring before new salt will go forward." Here is an express direction to pay Hewitt, Kercheval & Co.'s balance which was in acceptances at time amounting to $23,750, which was the whole of their balance as per their accounts returned, except $19.08, and that was paid by John J. Roe & Co., and the $23,750 was met and paid by Humphrey, Tutt & Terry, to whom the agency was transferred from John J. Roe & Co. by an arrangement made by said Ruffner, and sanctioned and acted upon by said Smith as the agent of Ruffner, Donnally & Co., and it was paid with the knowledge and by the direction of Smith, as well as Ruffner. Thus it will be seen that the account of Hewitt, Kercheval & Co. and Ruffner, Donnally & Co. as returned by Hewitt, Kercheval & Co., was fully settled and paid in accordance with the account as stated by Hewitt, Kercheval & Co. in their final accounts current returned to Ruffner, Donnally & Co., the balance in said account being $23,769.08.

After this account had been stated and settled by payments and on the 30th of August, 1858, some seventeen months after the final account was returned and more than a year after the balance to Hewitt, Kercheval & Co., had been settled by payment, said John B. Smith wrote a letter to Robert M. V. Kercheval dated at Louisville, 30th August, 1858, in which he says: "Messrs. Hum-

phrey, Tutt & Terry, make charges for commissions and cooperage; also drayage in some cases. Mr. Wilson, the acting agent of Ruffner, Donnally & Co., and Mr. Hale, of Ruffner, Hale & Co., as well as Mr. Ruffner, have written me frequently, and say write to you, that they expect next month, and early in the month, to make a settlement with Humphrey, Tutt & Terry, and wish me to say to you that they will expect you to pay whatever they may have to pay for winding up the business left by you. They further say, they have been informed that when you made up your mind to go to Liverpool that your instructions were to Mr. Martin to ship every barrel he could everywhere, as that would give you twenty cents in your pocket." To this letter Kercheval replied at length, repudiating the claims and charges made in Smith's said letter and claiming that Hewitt, Kercheval & Co., nor he, were in anywise responsible for any commissions or charges that Humphrey, Tutt & Terry may have charged; that Hewitt, Kercheval & Co., had nothing to do with the transfer by Ruffner, Donnally & Co., of the agency from John J. Roe & Co., to Humphrey, Tutt & Terry, and did not know of it at the time, or the terms on which it was done; that that was a matter of arrangement between Ruffner, Donnally & Co., and Humphrey, Tutt & Terry in which Hewitt, Kercheval & Co., had no part or concern. He also complains that he (Smith) did not make the objection sooner when he knew the facts better than now. To this letter Smith wrote a short reply dated 4th September, 1858, in which he says Kercheval's letter of the 2d inst. is at hand; that he wrote Kercheval only as he was requested by the parties and will lay his reply before them, and when he hears from them will again let Kercheval hear from him.

At this point further correspondence seems to have ceased on this subject and nothing further appears until this suit was brought.

1874.
June Term.

Ruffner,
Donnally & Co.,
v.
Hewitt,
Kercheval & Co.

1874.
June Term.

Ruffner,
Donnally & Co.
v.
Hewitt,
Kercheval & Co.

I should here state that it was part of the original contract between Hewitt, Roe & Co., and Ruffner, Donnally & Co., that Hewitt, Roe & Co., should accept for Ruffner, Donnally & Co., without charge and pay their bills when due, if in funds, without charge, but if Hewitt, Roe & Co. made advances they would make the additional entry. And this part of the contract appears to have been continued and acted on throughout all the transfers of the agency.

It appears that Hewitt, Kercheval & Co., by letters informed and complained to Ruffner, Donnally & Co., at different times in 1855, of the bad state and condition in which much of their salt was delivered on the levee at St. Louis, and especially as to its bad condition as to cooperage and informed them of the necessity, for its preservation, of much cooperage being done, beyond what might be considered ordinary cooperage; that for what they called ordinary cooperage they made no charge, but their charges were for extraordinary cooperage. I think the evidence clearly proves that much of the salt was delivered in very bad condition, as to cooperage and otherwise; that much of it had been on hand a considerable time before delivery and had been exposed and injured by bad usage before delivery; that the cooperage for which Hewitt, Kercheval & Co., charged Ruffner, Donnally & Co., was necessary and in fact essential to the preservation of the salt and putting it in a marketable condition; that it was reasonable and prudent that Hewitt, Kercheval & Co., should have the cooperage done, and that under the circumstances, as shown in the cause, and the law, Ruffner, Donnally & Co., should pay for it as they did. The charges of commission on barrels of salt used in filling up other deficient barrels may not be within the letter of the contract, still the charges as they occurred, were reported to Ruffner, Donnally & Co., with the other charges and were not objected to, and must be considered as acquiesced in and assented to by Ruffner, Donnally & Co., as

1874.
June Term.

Ruffner,
Donnally & Co.,
v.
Hewitt,
Kercheval & Co.

being within its spirit and according to their usages of trade.

The charge of twenty-five cents per barrel for salt fowarded from place of storage, and not from levees is perhaps not within the strict letter of the contract as originally made, as that contract so far as disclosed was twenty cents for sales at levee, twenty cents and drayage for forwarding from levee to country agents, and twenty-five cents, and storage for sales from place of storage. Upon the salt so forwarded from storage, Hewitt, Kercheval & Co., had paid the drayage from levee to place of storage, and the difference in cents to Hewitt, Kercheval & Co., between forwarding from the place of storage, and the levee must have been equal, at least, to five cents on the barrel. And I think the contract, according to its spirit, contemplated that Hewitt, Kercheval & Co., should receive the same compensation for forwarding and collecting that they were to receive for sales made at the same place; and Ruffner, Donnally & Co., made no objection to these charges when the final accounts current were returned by Hewitt, Kercheval & Co., although they did make enquiry as to two other charges, and in fact, did not raise or make any question or objection to these charges of commission on the three thousand one hundred and eighteen barrels of salt forwarded from place of storage for some eighteen months after the return of the final account current. Besides, I think the evidence clearly establishes that these three thousand one hundred and eighteen barrels of salt were not forwarded from place of storage contrary to instructions. It is true that during the spring of 1856, Ruffner, Donnally & Co., by their said agent, Smith, did instruct Hewitt, Kercheval & Co., not to forward any more salt to country agents, but to sell the salt in the city; but it is manifest that at that time, Smith supposed that the salt then in hand would be sold in the city during the ensuing summer and fall; but during the summer and fall the demand for salt seems to have been dull and the salt was not all sold by a large amount.

1874.
June Term.

Ruffner,
Donnally & Co.,
v.
Hewitt,
Kercheval & Co.

And on the 7th October, 1856, Ruffner, Donnally & Co. by their said agent, Smith, by letter to said Hewitt, Kercheval & Co., say : "as to Ruffner, Donnally & Co.'s salt we are anxious to have it closed off, and as we have written you, leave its management to your better judgment." See printed record, 326 ; also see letter from Lewis Ruffner to Hewitt, Kercheval & Co. of date 1st December, 1856. On the 15th December, 1856, after the salt had been forwarded, said Smith, as agent for Ruffner, Donnally & Co. said to Hewitt, Kercheval & Co., by letter, "we are sorry to part with you as our correspondent; as it is so, we are pleased to fall into such good hands as our mutual friends, J. J. Roe & Co." From the foregoing it appears that the disposition of the salt on hand was as early as October, committed by Ruffner, Donnally & Co. by their said agent, as well as one of the plaintiffs to the judgment and discretion of Hewitt, Kercheval & Co. and in the exercise of that judgment and discretion which they were desired to exercise, they forwarded the three thousand one hundred and eighteen barrels of salt to country agents and made their charges therefor, as rendered. And from the evidence of Cochran it was part of the contract and understanding between the parties at the time of the transfer of the agency from Hewitt, Kercheval & Co. to John J. Roe & Co., that Hewitt, Kercheval & Co. should receive the twenty-five cents per barrel for forwarding to country agents. It is quite probable that if Ruffner, Donnally & Co. had left the agency with Roe & Co., that there never would have been any confusion or difficulty about either this charge for forwarding, or drayage on the six thousand seven hundred barrels of salt turned over to John J. Roe & Co., or the charges on collections for salt forwarded to country agents. The whole of this difficulty was produced by Ruffner, Donnally & Co. transferring and turning over the agency from Roe & Co. to Humphrey, Tutt & Terry in which Hewitt, Kercheval & Co. had no lot or part. The disposition of the salt being expressly committed to the

judgment of Hewitt, Kercheval & Co. and they having exercised that judgment and acted therein as factors, in the absence of evidence to the contrary, it must be presumed that they acted in good faith and with reasonable prudence, under the circumstances. There is no evidence showing that Hewitt, Kercheval & Co. acted in bad faith toward Ruffner, Donnally & Co. in forwarding the salt to country agents at the time, and under the circumstances, they did. It is proven that Hewitt, Kercheval & Co. were active, energetic merchants and sold all the salt they could. Under the circumstances it can not be considered or held that Hewitt, Kercheval & Co. disobeyed instructions in forwarding the salt to the country and incurred a liability to Ruffner, Donnally & Co. for damages therefor. The charges for wood for dunnage and for money paid for labor about the necessary protection of salt at levee from freshet in the river it seems to me, from the case, as it appears, must be held to have been acquiesced in and assented to by Ruffner, Donnally & Co. as being correct and just.

There is no charge of fraud in the bill against Hewitt, Kercheval & Co. as to the matters I have been considering; nor are any errors or mistakes in the said final settlement with them pointed out or specifically stated in the bill. It is true they file as part of the bill the said paper writing "O. C." but that paper does not, on its face, purport to apply to Hewitt, Kercheval & Co., as it is made out specifically against Hewitt, Roe & Co.—But even though it be allowed that the part of the charges contained in paper "O. C" may, under the allegations of the bill, be reasonably construed to apply to Hewitt, Kercheval & Co., still the bill takes no notice of the settlement and payment of Hewitt, Kercheval & Co. and does not attempt to surcharge or falsify the settlement. And in addition thereto the evidence sustains the charges as made by Hewitt, Kercheval & Co. against Ruffner, Donnally & Co., in their various accounts rendered. The

79

letter of Ruffner, Donnally & Co. written by their agent Smith, to Hewitt, Kercheval & Co., on the 11th April, 1856, and other letters in the record, expressly authorize Hewitt, Kercheval & Co. to send a special messenger to the country to close up country consignments at the expense of Ruffner, Donnally & Co.   Printed record, 230.

I have not been able to find any evidence to justify the commissioner in concluding that the four hundred and seventy-three barrels in his report named, was used for filling up, simply to show how to account for it. The evidence of Cochran specifically proves the charge of $1,000, for cooperage in commissioner's report mentioned, to be correct and reasonable, and so of all or nearly al the other charges made by Hewitt, Kercheval & Co., in their accounts against Ruffner, Donnally & Co.; and I do not think his evidence is impeached or shown to be unworthy of credit.   Many of the charges came under his personal notice and supervision when made, and he was better qualified to testify correctly as to them, perhaps, than any other person, not interested.   He was the clerk of Hewitt, Kercheval & Co., and familiar with most of the transactions.   Upon the whole and without further specifications, it seems to me, that the charges of Hewitt, Kercheval & Co., made in their accounts rendered to Ruffner, Donnally & Co., are sustained by the evidence and course of business of the parties.

The charge of the commissioner of $2,570.29 and $616,84 interest for error in the report of Hewitt, Kercheval & Co., of sales of six thousand two hundred and sixty-nine barrels of salt in 1856, is, I think, unauthorized and unsupported.   It is not claimed in the bill or any paper filed therewith.   They report the sale of this salt at $2.35 per barrel and the commissioner charges them forty-one cents on the barrel more, simply because Hewitt, Kercheval & Co., sold salt of Ruffner, Hale & Co., at $2.76 per barrel during the same year.   The evidence shows that the salt of Ruffner, Hale & Co., sold in that year was new salt and in good cooperage and full weight,

and that under the circumstances, the old salt of Ruffner, <span style="float:right">1874.<br>June Term.</span>
Donnally & Co., with bad cooperage and slack weight,
could not be expected to command as full price as the <span style="float:right">Ruffner,<br>Donnally & Co.,<br>v.<br>Hewitt,<br>Kercheval & Co.</span>
salt of Ruffner, Hale & Co.; and Smith, the agent, evi-
dently so considered.  The sale of the salt, and at the
prices at which it was sold, in each month of the year
1856, were reported from time to time to Ruffner, Don-
nally & Co., and no objection was ever made to the price
at which this salt was sold until it was done before the
commissioner in this case.   I do not think there is evi-
dence in the cause sustaining this charge of the commis-
sioner either on the ground of mistake or bad faith on the
part of Hewitt, Kercheval & Co., but the contrary.

The charge of $8,555.68 and interest $2,053.36, made
in the commissioner's report for the three thousand one
hundred and eighteen barrels of salt shipped to the
country, at $2.76 barrel, is, I think, unauthorized.   This
is the same three thousand one hundred and eighteen
barrels of which I have before spoken as having been
shipped to country agents.

The charge of $18,381.60 and interest $4,411.56, for
six thousand six hundred and sixty barrels of salt, which
as the commissioner says from the negligence and omis-
sion of duty of Hewitt, Kercheval & Co., as consignees,
was not sold, is insupported by the evidence or law.
This is the same salt that was turned over by Hewitt,
Kercheval & Co., to John J. Roe & Co., minus forty
barrels thereof sold by Roe & Co., and the same with
which the commissioner has charged Humphrey, Tutt
& Terry, in their account.

It appears that about the first of the year 1856 an-
other firm and partnership of Ruffner, Hale & Co. was
formed for the purpose of buying and selling Kanawha
salt in the West and elsewhere.   This firm, as alleged
in the bill, was composed of twelve persons, and it
is proven that all of these persons, including Lewis
Ruffner, except two, were members of the firm of
Ruffner, Donnally & Co.   The bill alleges that the firm of

1874.
June Term.

Ruffner,
Donnally & Co.,
v.
Hewitt,
Kercheval & Co.

Ruffner, Donnally & Co. expired with the year 1855, and only existed after that time "for the purpose of closing and winding up its business." From August 1, 1854, to the expiration of the year 1855, and afterwards till near the close of 1856, Hewitt, Kercheval & Co. continued the agents of Ruffner, Donnally & Co. in the selling their salt on hand and undisposed of in St. Louis, at the expiration of 1855. Ruffner, Donnally & Co. ceased to purchase salt after 1855, and they shipped no salt to St. Louis after the year 1855.

In the spring of 1856, Hewitt, Kercheval & Co., at the instance of Lewis Ruffner, who was then an active partner of the firm of Ruffner, Hale & Co., as well as a member of the firm of Ruffner, Donnally & Co., took the agency for the sale of the Kanawha salt, shipped by Ruffner, Hale & Co. to St. Louis, for sale, and for forwarding to country agents, and during that year they sold some nine thousand four hundred and forty barrels, which brought in the gross $2.76 per barrel.

I am unable to understand why the commissioner charged Hewitt, Kercheval & Co. with this six thousand six hundred and sixty barrels of salt, unless it was because he thought Hewitt, Kercheval & Co. were guilty of negligence and violation of duty as factors of Ruffner, Donnally & Co. in accepting the agency for the sale of the salt of Ruffner, Hale & Co., and in not selling the six thousand six hundred and sixty barrels of salt instead of the salt of Ruffner, Donnally & Co., and at the same price, and that if the salt of Ruffner, Hale & Co. had been sold by them, the persons who bought the Ruffner, Hale & Co. salt, would have bought the old salt of Ruffner, Donnally & Co. at the same price. Now, it must be remembered that Hewitt, Kercheval & Co. did sell of the old salt of Ruffner, Donnally & Co. six thousand two hundred and sixty-nine barrels during that year. And Hewitt, Kercheval & Co. deny that Ruffner, Donnally & Co. had any such right, as that Hewitt, Kercheval & Co. could violate it by acting for Ruffner, Hale &

1874.
June Term.

Ruffner,
Donnally & Co.,
v.
Hewitt,
Kercheval & Co.

Co. in the sale of Kanawha salt for them; that they were free and independent commission merchants, and under no obligation of contract or otherwise not to sell for Ruffner, Hale & Co., and they would in no event allow themselves to come under any such obligation to Ruffner, Donnally & Co., or to any other firm or person. And that it was understood and desired by Ruffner, Donnally & Co. and Ruffner, Hale & Co. that they should take charge of and manage the salt business for Ruffner, Hale & Co. at St. Louis, and thus prevent all coalition, and shut out competition, and so avoid a decline in price, which, owing to the fact that Ruffner, Donnally & Co's salt was old, out of condition and unsaleable, would have been specially oppressive upon them. Hewitt, Kercheval & Co., deny that they undertook or promised to close out the salt of Ruffner, Donnally & Co. in 1856, as charged in the bill.

They further say, substantially, that in making, and in endeavoring, to make sales of the salt of Ruffner, Donnally & Co. and Ruffner, Hale & Co. they gave preference to the salt of Ruffner, Donnally & Co. and sold all they could of it. The commissioners in making this large charge against Hewitt, Kercheval & Co. is to my mind clearly not sustained by the evidence or facts in the case and the law as applicable thereto.

*First.* Because the correspondence of J. B. Smith, as the agent of Ruffner, Donnally & Co. with Hewitt, Kercheval & Co. on the 10th and 30th of March, 1856, and of L. Ruffner one of the plaintiffs, on the 1st April, 1856, and of Ruffner, Donnally & Co., by said Smith, on the 4th of April, 1856, and other facts and circumstances appearing in the cause, show that Hewitt, Kercheval & Co. took the agency for the sale of the salt of Ruffner, Hale & Co., at St. Louis, with the knowledge and consent of Ruffner, Donnally & Co.

*Second.* That the salt of Ruffner, Donnally & Co., which was unsold on the 22d of December, 1856, by Hewitt, Kercheval & Co. and which was turned over to

1874.
June Term.

Ruffner,
Donnally & Co.,
v.
Hewitt,
Kercheval & Co.

John J. Roe & Co., was, by L. Ruffner, one of the plaintiffs, recognized as the salt of Ruffner, Donnally & Co., and also by Ruffner, Donnally & Co., by their general agent, John B. Smith and that the transfer of the agency of that salt to John J. Roe & Co. as their agents and as their salt was fully recognized and assented to by Ruffner, Donnally & Co.; that Ruffner, Donnally & Co and Ruffner, Hale & Co., kept the agency of the sale of their salt with the same persons in St. Louis from the time the salt of Ruffner, Hale & Co. first appeared there in market, and when the agency of the one was transferred, the agency of the other was, also, to the same person, and and without objection, but in fact by consent. When Smith as the general agent of Ruffner, Donnally & Co., for the West, sanctioned and consented to the transfer of the salt of Ruffner, Donnally & Co. to John J. Roe & Co., he knew that the agency for the sale of the salt of Ruffner, Hale & Co. was also transferred to them; and so of the transfer to Humphrey, Tutt & Terry afterwards made. Smith also became the local agent of Ruffner, Hale & Co. at Louisville, in the spring of 1856, while he was the agent of Ruffner, Donnally & Co. as aforesaid, and he continued in both agencies so far as I am able to see, without objection.

*Third.* When the salt was tranferred to John J. Roe & Co., no claim, or pretence of claim, was urged or intimated as against Hewitt, Kercheval & Co., for any such cause, nor was any such claim made at the time Hewitt, Kercheval & Co., returned their final accounts current showing the debit of Ruffner, Donnally & Co., to them or within any reasonable time thereafter, nor indeed, so far as the record shows, until the filing of the bill in this cause in the Spring of 1859; and then the claim was not for the value of the salt. And, further, in January, 1857, long after all the facts to this respect were fully known and after Hewitt, Kercheval & Co., had rendered their final accounts current, Ruffner, Donnally & Co., by their agent Smith, for and on behalf of Ruffner, Don-

nally & Co., directed the balance due Hewitt, Kerche-
val & Co., according to their final account current to be
paid, and it was so accordingly paid.

Without deciding the abstract proposition of law,
whether a factor engaged in the selling of salt for anoth-
er, is guilty of a violation of duty by simply becoming
the factor of a third person, without consent, for the sale
of salt at the same time and place, I feel constrained to
hold, in this case, that it does not appear that Hewitt,
Kercheval & Co., under the facts and circumstances dis-
closed by the record, were guilty of negligence or vio-
lation of duty to Ruffner, Donnally & Co., in acting as
the factors of Ruffner, Hale & Co., for the sale of their
salt in the year 1856. And if they had violated their
duty in this respect, they would not thereby necessarily
become chargeable by Ruffner, Donnally & Co., with the
value of their salt not sold.

The charge in the commissioner's report against
Hewitt, Kercheval & Co., of $1,818.01 and interest
$436.32 relating to said six thousand two hundred and
sixty-nine barrels of salt sold in 1856, and being the
last item in the commissioner's account "B." against
Hewitt, Kercheval & Co., is clearly not supported, and
to a great degree, for the reasons herein stated, in consid-
ing the charges of forty-one cents per barrel for the
same six thousand two hundred and sixty-nine barrels
sold in 1856. On the whole, therefore, there was no er-
ror in the decree of the court in sustaining the excep-
tions of Hewitt, Kercheval & Co., to the said report of
commissioner Laidley.

The plaintiff filed no exceptions to the report of the
commissioner as to the accounts of Hewitt, Roe & Co.,
or Hewitt, Kercheval & Co., or either of them. The
commissioner referred to the court the matter of the re-
cord of Houseman, Smith & Co., against Hewitt, Ker-
cheval & Co., filed as evidence before him by Hewitt,
Kercheval & Co., for its judgment, and the court decided
that the amount of the money shown by the said record

1874.
June Term.

Ruffner,
Donnally & Co.,
v.
Hewitt,
Kercheval & Co.

1874.
June Term.

Ruffner,
Donnally & Co.
v.
Hewitt,
Kercheval & Co.

against Hewitt, Kercheval & Co., is a proper charge against the complainants, and accordingly, for this account, decreed in favor of Hewitt, Kercheval & Co., against the plaintiffs for the sum of $1,348,21, being the principal and interest of the recovery aforesaid due at the date of the decree, and also for the further sum of $161,50, being the principal and interest paid by them for defending the same.

It is argued here that it was error in the circuit court to allow Hewitt, Kercheval & Co, this amount or any other amount on account of the recovery of Houseman, Smith & Co., against Hewitt, Kercheval & Co. The facts in relation to this matter as disclosed by the record are substantially as follows. viz: That the instructions of Ruffner, Donnally & Co., to Hewitt, Kercheval & Co., were to sell their salt by the barrel according to the lick weight, deducting therefrom a tare of twenty-five pounds on the barrel. In the year 1855, Hewitt, Kercheval & Co., as the factors of Ruffner, Donnally & Co., sold to Houseman, Smith & Co., twenty-six hundred barrels of salt at forty cents per bushel, according to lick weight, and in accordance with their instructions, as they contend, and delivered, or caused to be delivered, the same to Houseman, Smith & Co. Afterwards, in February, 1856, Houseman, Smith & Co., brought suit to recover damages from Hewitt, Kercheval & Co., on account of the shortness of the weight of the salt—They alleging that they bought eighteen thousand seven hundred and sixty-six and five-eighths bushels of salt as being contained in said two thousand six hundred barrels, when in fact there was only fifteen thousand nine hundred and forty-two bushels of salt in said two thousand six hundred barrels.

Hewitt, Kercheval & Co., shortly after said suit was brought, informed Ruffner, Donnally & Co., thereof, and Ruffner, Donnally & Co., by their agent, were informed of the suit by letter, and during the pendency thereof allowed and paid, without objection, some costs incurred

1874.
June Term.

Ruffner,
Donnally & Co.,
v.
Hewitt,
Kercheval & Co.

by Hewitt. Kercheval & Co., in preparing for making defence thereto, as may be seen by some of the accounts current of Hewitt, Kercheval & Co., rendered in 1856. During the pendency of the suit Hewitt, Kercheval & Co. employed counsel and made defence to the suit, and the plea filed by them was, substantially, that they sold to Houseman, Smith & Co., two thousand six hundred barrels of salt at the measure weight marked on the barrels, less twenty-five pounds per barrel as tare, at which weights the said twenty-six hundred barrels, contained eighteen thousand seven hundred and forty-six and thirty-three hundreths bushels of salt; that at the time of the sale of the salt it was proposed by James Houseman, one of the plaintiffs therein, that Hewitt, Kercheval & Co., should sell the salt to the plaintiffs at forty cents per bushel, at actual measurement; that the number of bushels should be ascertained by weighing the salt or by re-weighing a part, and thus finding the falling off from the original, or lick weight, as marked upon the barrels, and making a corresponding deduction or average loss on the entire lot of salt: Both of which propositions were refused by Hewitt, Kercheval & Co., who did, in fact, only sell the salt at the original lick weights, as marked on the barrels, less the twenty-five pounds per barrel, as tare &c. In October, 1858, at the trial of the cause, Houseman, Smith & Co., recovered judgment against Hewitt, Kercheval & Co., for $787.38 debt, together with $51.95 costs, which Hewitt, Kercheval & Co., paid, and also paid $100, attorney's fee for defence, of which Hewitt, Kercheval & Co., notified Ruffner, Donnally & Co., after the recovery, by letter dated October 16th, 1858, and required of Ruffner, Donnally & Co. payment thereof. On the 16th of February 1856, Ruffner, Donnally & Co., by their agent, Smith, wrote Hewitt, Kercheval & Co., in answer to their letter informing them that the suit was brought as follows: "We are sorry Houseman, Smith & Co., chose to trouble you in this matter, as

80

we are at the same time confident they got just what they bought, and as they bought it, we would prefer that the thing should be arbitrated, as it is less trouble; but we will say to you, act in the premises as if it were your own and we will be satisfied with whatever you do." Printed record 330. See also in printed record 331, for a further letter. Hewitt, Kercheval & Co., accounted to Ruffner, Donnally & Co., for the salt so sold to Housman, Smith & Co., and for the full amount received. The case was not arbitrated as Hewitt, Kercheval & Co. seem to have desired it should be.

The general doctrine seems to be that if an agent has, at the express or the implied request of his principal, necessarily incurred expenses in carrying on or defending suits, for the benefit of his principal, these expenses must be borne by the latter, and the agent will be entitled to recover them from him. And if an agent has, without his own default, incurred losses or damages, in the course of transacting the business of his agency, or in following the instructions of his principal, he will be entitled to full compensation therefor. Story on Agency secs. 235 and 339 and cases there cited. It is not every loss or damage, for which the agent will be entitled to re-imbursement from his principal. The latter is liable only for such losses and damages as are direct and immediate, and naturally flow from the execution of the agency. If, therefore, the losses or damages are casual, accidental, oblique or remote, the principal is not liable therefor. In short, the agency must be the cause, and not merely the occasion, of the losses or damages, to found a just right to re-imbursement. Story on Agency sec. 341.

Ruffner, Donnally & Co., had no information touching the said suit or its merits before the trial thereof, except such as they derived from Hewitt, Kercheval & Co., by letter, and of course what they said and did in relation thereto, by letter or otherwise, was on the faith of the correctness of that information. So far as I can see

1874.
June Term.

Ruffner,
Donnally & Co.,
v.
Hewitt,
Kercheval & Co.

from the record in the case of Housman, Smith & Co., against Hewitt, Kercheval & Co., the only issue presented at the trial by the pleadings was whether Hewitt, Kercheval & Co., had sold the salt by lick weight or actual weight, and it by lick weight whether they had delivered the full amount. The issue in the case was found against Hewitt, Kercheval & Co., that is to say the jury upon the issue, must have considered, either that the whole amount sold was not delivered, if the sale was by lick weight, or that the sale was not by lick weight but actual weight—otherwise they could not have found the verdict for Housman, Smith & Co., against Hewitt, Kercheval & Co. The court seems to have been satisfied with the verdict, as it rendered judgment for the full amount thereof and costs. If Hewitt, Kercheval & Co. sold by lick weight and did not deliver the full amount and the recovery was on that account, then the recovery was because of their default. If they sold by actual weight and not lick weight and delivered the amount sold according to lick weight, but not according to actual weight and the recovery was on that account, then they disobeyed thier instructions and the recovery was because of their default. The record of that cause, as presented, is strong evidence against the right of Hewitt, Kercheval & Co., to recover against Ruffner. Donnally & Co., and I do not think its force is overcome by other evidence in the record. It is true the record proves the recovery, but when taken in connection with the evidence, as to the instructions of Hewitt, Kercheval & Co., by Ruffner, Donnally & Co., it also tends strongly to prove that the recovery must have been had by reason of the default or neglect of Hewitt, Kercheval & Co., either in the sale or in making a reasonably proper and diligent defence to the suit. I think the circuit court, under all the evidence, erred in decreeing in favor of Hewitt, Kercheval & Co., against Ruffner, Donnally & Co., for the amount of the recovery of Housman, Smith & Co.

The firm of John J. Roe & Co. was formed about 1st

1874.
June Term.

Ruffner,
Donnally & Co.
v.
Hewitt,
Kercheval & Co.

January, 1856. This firm, as I have stated, was composed, alone, of Roe & Moore, and they were commission merchants in St. Louis. As heretofore stated, the firm of Hewitt, Kercheval & Co., at or about the time of their dissolution, and about the 22d of December, 1856, by an arrangement of Hewitt, Kercheval & Co., Roe & Co. and plaintiff Lewis Ruffner, which was recognized, sanctioned, ratified and acted on by Ruffner, Donnally & Co., by their general agent John B. Smith, Hewitt, Kercheval & Co. transferred the salt of Ruffner, Donnally & Co., in their hands in St. Louis, not disposed of, and that shipped to country agents by them and Hewitt, Roe & Co., which had not been fully accounted for, and all the notes, bills and evidences of debt, of Ruffner, Donnally & Co., in their hands to said Roe, & Co., and Roe & Co. received the same and held the agency as the agents and factors of Ruffner, Donnally & Co. until the —— day of January, 1857, about one month only. During that time the firm of Ruffner, Donnally & Co. being pressed for money to meet their engagements, and protect their credit, through their said agent, Smith, procured Roe & Co. to make advancements to Ruffner, Donnally & Co. by acceptances, &c. on the faith of the salt in their hands for sale and that in hands of country agents, notes, &c., to the amount of some $25,000.00.

Roe & Co., during said month, sold forty barrels of the salt turned over to them for which they rendered an account to Ruffner, Donnally & Co., about the —— day of January, 1857, in which it will be seen that they charge on each barrel sold 25—8 cents. that is to say seventeen cents per barrel according to the arrangement to which I have before alluded. Also on the —— day of January, 1857, they rendered to Ruffner, Donnally & Co. an account current to date, stating their charges against Ruffner, Donnally & Co. for cooperage and other things in the commissioner's report mentioned. To this account current and report of sales no objection appears to have been made or pointed out, in any reasonable time, nor indeed till long after the commencement of this suit.

About the —— day of January, 1857, John J. Roe & Co. by and in pursuance of an arrangement made and agreed upon by Humphrey, Tutt & Terry, John J. Roe & Co. and plaintiff Lewis Ruffner, sanctioned, recognized and ratified by Ruffner, Donnally & Co. by their said agent, John B. Smith, transferred to Humphrey, Tutt & Terry the balance of the salt in their hands in St. Louis unsold, and also seven thousand seven hundred and seventy barrels of salt shipped to country agents by Hewitt, Kercheval & Co., not fully accounted for and $19,034.56 of bills and notes belonging to Ruffner, Donnally & Co. which seems to be $1,883.39 more than received from Hewitt, Kercheval & Co. and seven hundred and eighty-nine barrels of salt less than was shipped by Hewitt, Kercheval & Co. to country agents and turned over to John J. Roe & Co. John J. Roe & Co. retained the unsettled salt matters placed by Hewitt, Roe & Co. in the hands of country agents in pursuance of said arrangement to indemnify them against the indebtedness of Ruffner, Donnally & Co. to them on acceptances, &c. Roe & Co. took from Humphrey, Tutt & Terry receipts, &c., which fully appear in the record.

Afterwards, in October, 1857, John J. Roe & Co., had and made a full adjustment and settlement of their accounts and claims, and of the salt placed by Hewitt, Roe & Co., in the hands of country agents &c., with plaintiff Lewis Ruffner and said John B. Smith, agent of Ruffner, & Co., and upon settlement and adjustment the said Smith with the full knowledge and consent of said Ruffner, in consideration of the sum of $2,000.00 paid by said Roe & Co., to Ruffner, Donnally & Co., gave to said Roe & Co., a receipt in full settlement of all claims against them and against Hewitt, Roe & Co., and relinquished and transferred to them all notes, accounts, salt held by country agents, and all evidences of indebtedness to Ruffner, Donnally & Co., or to them for or on account, growing out of previous transactions with them as the agents of Ruffner, Donnally & Co., for the sale of

1874.
June Term.

Ruffner,
Donnally & Co.
v.
Hewitt,
Kercheval & Co.

Kanawha salt, agreeably to their proposition, made to Ruffner, Donnally & Co., in their letter of the 9th of October. This settlement and adjustment must have been made with a knowledge of all the facts at the time by Ruffner and Smith, the agent; and while these facts were fresh and familiar said Smith, the plaintiff's witness, in his deposition, says he directed and sanctioned the transfer of the salt and other effects of Ruffner, Donnally & Co., in January, 1857, from John J. Roe & Co., to Humphrey Tutt & Terry. He also says, substantially, that all his acts as agent of Ruffner, Donnally & Co., up to the date of his deposition, were recognized by Ruffner, Donnally & Co., and that John J. Roe & Co., had seven thousand four hundred and five barrels of salt transferred to them, it being the balance of Hewitt, Roe & Co's., salt which they settled for, and that the receipt, to which I have referred is correct, that the receipt was intended to close said Roe & Co's., account in full; also the seven thousand four hundred and five barrels of salt transferred to said Roe & Co from Hewitt, Roe & Co.; that the seven thousand four hundred and five barrels of salt was all Hewitt, Roe & Co., had, and that has been closed and paid for by said Roe & Co. Ruffner, Donnally & Co., in the letter of 13th November, 1857, written by said Smith enclosing said receipt to Roe & Co., to which I have already referred says that the account of said Roe & Co., and Hewitt, Roe & Co., stood open on their books, and asks for a copy of Roe & Co's., account against Ruffner, Donnally & Co.; also of Hewitt, Roe & Co., against same that Ruffner, Donnally & Co., might enter them, and close and square both accounts, saying that the accounts asked for had been rendered, but had been lost or destroyed. In accordance with this request said Roe & Co., did send to Ruffner, Donnally & Co., their final account current or a copy thereof, on the 24th November, 1857, which appears in the record, to which no objection or exception appears to have been made in any way or respect or to said receipt, until in April, 1860, in the ex-

amination of said John B. Smith, and afterwards in 1861 before the commissioner, as per his report. This final account closed and squared the accounts of Roe & Co., and Ruffner, Donnally & Co. The plaintiffs must have known of this receipt and settlement and of Roe & Co's., accounts and accounts rendered before and when they filed their bill ; still the bill makes no reference to the receipt or settlement and does not surcharge or falsify it, or attempt to do so, nor in fact does the bill, as I understand it, claim, expressly, that said Roe & Co., are indebted, to Ruffner Donnally & Co., on any account. It does claim, expressly that the other firms are each indebted, and asks a settlement of the accounts of Roe & Co., as well as the others, as though no settlement of their accounts was ever made. Fraud is not alleged or proved in the transactions of Roe & Co., or in the said settlement, nor is any sufficient reason shown why the returns of Roe & Co., and said settlement, should be disturbed. Much of the law I have stated and much I have said in considering the case as to Hewitt, Roe & Co., applies directly to the accounts of John J. Roe & Co., and the said settlement thereof. The receipt and settlement are set up and relied on by Roe & Co., by their answer filed, which is sworn to by John J. Roe. The answer of Roe & Co. is responsive to the bill, and expressly denies any and all indebtedness or liability to Ruffner, Donnally & Co., and the answer, and indeed all the answers were filed, and the most of the proceedings had in the cause several years prior to 1869, when the Code of West Virginia took effect. Entertaining these views I do not feel at liberty to determine that there is error in the decree of the circuit court in sustaining the exceptions of John J. Roe & Co., to the commissioner's report.

I have hereinbefore ascertained and stated the amount of salt on hand in St. Louis, and in the hands of country agents, shipped by Hewitt, Kercheval & Co., notes, bills, &c., that were transferred from John J. Roe & Co. to

1874.
June Term.

Ruffner,
Donnally & Co.,
v.
Hewitt,
Kercheval & Co.

Humphrey, Tutt & Terry, and I have stated that at the time the agency was transferred from Hewitt, Kercheval & Co. to John J. Roe & Co., Ruffner, Donnally & Co. were indebted to Hewitt, Kercheval & Co. in the sum of $23,769.08, and that $23,750 thereof was paid to or in relief of Hewitt, Kercheval & Co. by Humphrey, Tutt & Terry after the agency was transferred to the latter, by way of advancement to Ruffner, Donnally & Co., at the instance and request of Lewis Ruffner, one of the plaintiffs, and also of John B. Smith, the agent of Ruffner, Donnally & Co. It further appears that Humphrey, Tutt & Terry, after the agency was transferred to them, at the instance and request of said Ruffner and of said Smith, as agent as aforesaid, made through said Smith, further advancements to Ruffner, Donnally & Co., upon bills or drafts of Ruffner, Donnally & Co., drawn and endorsed by said Smith, as agent of Ruffner, Donnally & Co., to the amount of $30,000, which was applied by said Smith, as such agent, to the use of Ruffner, Donnally & Co. in the payment of their just debts. The $23,750 due to Hewitt, Kercheval & Co., was not payable at the time of the transfer of the agency from Hewitt, Kercheval & Co. to John J. Roe & Co. It was and became payable during the ensuing spring of 1857, and it was for bills or drafts drawn and endorsed by said Smith, as agent as aforesaid upon Hewitt, Kercheval & Co., and by Hewitt, Kercheval & Co. accepted for the use and benefit of Ruffner, Donnally & Co.; and Smith, as such agent, received the proceeds thereof and applied them to the use of Ruffner, Donnally & Co. in the payment of their just debts. Under these circumstances, it is clear that Ruffner, Donnally & Co. received the full benefit of both of said advancements in the extinguishment of their just debts and liabilities and to the full extent thereof. The commissioner, in his report, page 180 printed record, says the payment by Hewitt, Kercheval & Co. of the acceptance is not disputed;" and in his report as to the accounts of Ruffner,

Donnally & Co. and Humphrey, Tutt & Terry, he allows Humphrey, Tutt & Terry the full amount thereof, with interest. To the action of the commissioner, Ruffner, Donnally & Co., by their counsel, filed exceptions.

1874.
June Term.

Ruffner,
Donnally & Co.,
v.
Hewitt,
Kercheval & Co.

The *first* exception is as to the several items making the said $23,750, of acceptances of Hewitt, Kercheval & Co., and the exception is that "Ruffner, Donnally & Co., without express promise in writing, are not bound to pay the debt of another, nor had Hewitt, Kercheval & Co., on which to base on the part of Humphrey, Tutt & Terry, a promise to pay their acceptances, because the transaction was fraudulent on the part of Hewitt, Kercheval & Co., and Humphrey, Tutt & Terry must look to Hewitt, Kercheval & Co., for their compensation. And Ruffner, Donnally & Co.'s exception to the several items making said $30,000.00, being acceptances by Humphrey, Tutt & Terry, of ten bills drawn by J. B. Smith, as agent of Ruffner, Donnally & Co.; that the bills were drawn after the partnership of Ruffner, Donnally & Co., had expired by limitation, and while the Company only existed for the purpose of winding up and closing its business, all of which was known to the acceptors, as shown by the evidence in the cause." At the time of the transfer of the agency from Hewitt, Kercheval & Co., to John J. Roe & Co., by Ruffner, one of the plaintiffs, and approved, ratified and sanctioned by said Smith, as the agent of Ruffner, Donnally & Co., having full control of their salt business at St. Louis, and in the West, generally, the said debt to Hewitt, Kercheval & Co., was known and fully recognized by both Ruffner and said Smith, and it was a part of the contract and arrangement of transfer of the agency, so ratified and sanctioned by said Smith, that John J. Roe & Co., should pay to Hewitt, Kercheval & Co., or in their relief by way of advancement to Ruffner, Donnally & Co., the said $23,750.00. Before the $23,750.00 was paid by John J. Roe & Co., the agency was trans-

81

1874.
June Term.

Ruffner,
Donnally & Co.
v.
Hewitt,
Kercheval & Co.

ferred, as before stated, from John J. Roe & Co., to Humphrey, Tutt & Terry, and it was a part of the arrangement and contract of the last named transfer of agency that Humphrey, Tutt & Terry should pay the $23,750 to, or in relief Hewitt, Kercheval & Co., by way of advancement and for the use and benefit of Ruffner, Donnally & Co. This last arrangement of transfer was also made by said Ruffner, and fully sanctioned and ratified by Smith, as agent, as aforesaid. And it was by virtue of, and in pursuance of this arrangement, and at the instance and request of both Ruffner and said Smith, as agent, that Humphrey, Tutt & Terry did pay said $23,750, of which Ruffner, Donnally & Co., had received the full benefit, and, in justice, was their honest debt, for which they had received full consideration in money. The payment of this debt for Ruffner, Donnally & Co., appears to have been made in good faith by Humphrey, Tutt & Terry, and was not done officiously. If this $23,750 can, in point of law and justice, be held to be the debt of Ruffner, Donnally & Co., and the payment thereof not being officious, on the part of Humphrey, Tutt & Terry, then, according to the principles decided in the case of *Brown's Exor. v. Higginbotham*, 5 Leigh, 583, Ruffner, Donnally & Co., and each member of that firm, are, justly and legally, liable to Humphrey, Tutt & Terry, therefor, and will be so held in equity.

This leads me to the enquiry, as to whether the said debt of $23,750 was, in point of law and justice, the debt of Ruffner, Donnally & Co. In other words, if Hewitt, Kercheval & Co. had paid said acceptances, in lieu of Humphrey, Tutt & Terry, could Hewitt, Kercheval & Co., have recovered the same from Ruffner, Donnally & Co., at law or in equity?

At the expiration of the year 1855, we have seen that Ruffner, Donnally & Co., had a large amount of salt on hand in different parts of the country, as well as choses in action, and, perhaps, other property undisposed of and unsettled, and that their indebtedness was very large.

1871.
June Term.

Ruffner,
Donnally & Co.,
v.
Hewitt,
Kercheval & Co.

This immense partnership and firm's business was then unsettled. It had to be settled, by some person or persons and the debts and liabilities paid. We have seen by the authorities already quoted the power and authority of each member of the firm after dissolution or the expiration of the partnership, which is the same to act for and on behalf of the other members and so as to bind them in settling up the business and affairs of the firm.—It is unnecessary for me here to repeat these authorities. I only, again refer to them. I have before referred to the power of attorney made to J. B. Smith when he was first appointed agent and quoted therefrom, and I have also quoted the notice published by Ruffner, Donnally & Co., of the expiration of the partnership, and authorizing John B. Smith to use the "name of Ruffner, Donnally & Co., in liquidation." We have seen that said Smith had sole control of Ruffner, Donnally & Co.'s business at St. Louis after the year 1855, that he reported his proceedings and actions as their agent to Ruffner, Donnally & Co., at Kanawha county, quarterly; that after the expiration of 1855, and in 1856 and 1857, he continued to make bills, drafts, &c., and endorse the same in the name of Ruffner, Donnally & Co., as their agent and raise money thereon and apply the same to the use and benefit of Ruffner, Donnally & Co., in 1856 and 1857, as he did prior to the expiration of 1855; and that he procured money in this way, by way of advancements and collections, from agents at St. Louis and elsewhere, and that it was necessary that he should do this to protect the credit of Ruffner, Donnally & Co., and thereby most probably prevent a multitude of suits and large costs and sacrifices of property of Ruffner, Donnally & Co. All the salt of Ruffner, Donnally & Co., at and after the expiration of the partnership of Ruffner, Donnally, & Co., in states other than Virginia, was liable to be proceeded against and sold by process of attachment by the creditors of Ruffner, Donnally & Co., in the state or states in which it was. This was so in

1856 and 1857, and if the debts had not been met and paid by Ruffner, Donnally & Co., by Smith as agent, or caused by him to be paid, as they were, the consequence and results to Ruffner, Donnally & Co., might have been ruinous, and in all probability would have been. Smith, we have seen, says that in 1856, he raised and applied in this way, $500,000, at least, and that he did it in the name and as agent of Ruffner, Dnnnally & Co., and among others was this $23,750 of Hewitt, Kercheval & Co. And in 1857 the $30,000 of Humphrey, Tutt & Terry. And Smith in his deposition, taken by plaintiffs, says in substance, that all his acts as agent of Ruffner, Donnally & Co., done after the execution of said power of attorney and up to the date of his deposition had been recognized by Ruffner, Donnally & Co. What else can we understand by this statement other than that Ruffner, Donnally & Co., had ratified and sanctioned all of his acts as to the matters under consideration, as well as others, as being rightfully done—done by their authority and binding upon them? I apprehend there can be no doubt that the members of a dissolved or expired partnership, may, jointly, appoint an agent or agents to wind up their business, to place their property in the hands of factors for sale, to receive advancements upon their property, from their agents or factors, and to make bills and drafts and endorse and accept the same in the name of the firm, so as to bind them, and this may be done verbally or by writing, and the agency may be implied, inferred or ratified by acquiescence, &c., as in any other case. An agent may, by a verbal authority, or by a mere implied authority, sign or endorse promissory notes for another. Story on Agency, sec. 50.

I do not decide the question of law as to whether the expiration of the partnership *per se* revoked the agency and powers of John B. Smith, under said power of attorney, because it is unnecessary.

I am satisfied from the evidence, papers and exhibits in this cause, and the law bearing on the subject which

1874.
June Term.

Ruffner,
Donnally & Co.,
v.
Hewitt,
Kercheval & Co.

I have cited, that, Ruffner, Donnally & Co., did continue the agency of John B. Smith, after the expiration of the year 1855 and during the years 1856 and 1857, in and about their salt business, for the purposes which he acted as their agent in the premises and now under consideration; and especially of placing their property in the hands of factors, changing factors, receiving advancements from the factors in money or raising it by bills or drafts drawn, accepted or endorsed in the firm name of Ruffner, Donnally & Co., by said Smith, as their agent, from the factors, to apply to the payment of their debts as was done in this case by said Smith; and that while said Smith was so acting as the agent of Ruffner, Donnally & Co., they were duly informed thereof from time to time, and fully acquiesced in and ratified all his acts in the premises, including the said $23,750 and the $30,000, and that the commissioner justly and properly charged Ruffner, Donnally & Co., in his said report with said $23,750, and the $30,000, and that the same constitutes a just debt against Ruffner, Donnally & Co., for which they must account to Humphrey, Tutt & Terry. If Ruffner, Donnally & Co., continued Hewitt, Kercheval & Co., as factors, by their authorized agent, Smith, after 1855, and Smith had authority to receive advancements &c., from the factor to be applied to the payment of the debts of Ruffner, Donnally & Co., then the said advancements of Hewitt, Kercheval & Co., so made in 1856, constituted a lien on the salt, notes and bills receivable in their hands for which they sold salt of Ruffner, Donnally & Co., and they had the right to sell the salt and collect the notes and bills and apply the proceeds as far as necessary to pay their lien or use it by way of set-off. Story on Agency, sections 342, 368, 371. Hewitt, Kercheval & Co., then had a lien on the salt, notes and bills receivable of Ruffner, Donnally & Co., at the time the agency was transferred by them to John J. Roe & Co., and by delivering the same to John J. Roe & Co., for the purposes they did, they lost their

lien. Story on Agency, sections 366 and 367. And they delivered the salt and notes &c., to John J. Roe & Co,, and thereby lost their lien in consideration that John J. Roe & Co., under the arrangement of transfer, was to pay their debt for Ruffner, Donnally & Co. But for this consideration it is more than probable that Hewitt, Kercheval & Co., would not have parted with the possession of the salt and notes in their hands, but would have held them for the security and satisfaction of their debt, as they might have done, as before stated. And when the transfer was made to Humphrey, Tutt & Terry, it was agreed and arranged that Humphrey, Tutt & Terry should pay Hewitt, Kercheval & Co's., debt against Ruffner, Donnally & Co., by way of advancement for Ruffner, Donnally & Co., in lieu of John J. Roe & Co.; and in pursuance of that arrangement, Humphrey, Tutt & Terry did pay the .said $23,750 to, or in relief of, Hewitt, Kercheval & Co. I am unable to see anything fraudulent or wrong in this transaction, or that the statute of frauds, as between Hewitt, Kercheval & Co., and Ruffner, Donnally & Co., or Humphrey, Tutt & Terry and Ruffner, Donnally & Co., applies. But it is clear to my mind that to hold that Ruffner, Donnally & Co., should not be charged with the $23,750 and $30,000 so paid by Humphrey, Tutt & Terry, would, under the peculiar circumstances presented by this case, amount to allowing Ruffner, Donnally & Co., to perpetrate a fraud on Humphrey, Tutt & Terry. And not only so, but would establish a precedent that would allow them and others to do the same thing in other cases of similar character. Ruffner, Donnally & Co., in this case call on Humphrey, Tutt & Terry, to account to them for the salt, notes, &c.,—they should be held to account in so far as they have not already done so, but at the same time it is equally just and right that Ruffner, Donnally & Co., should be held to account to Humphrey, Tutt & Terry, for the money so paid to and for them, and of which they received the full benefit.

I do not think the *third* exception of Ruffner, Donnally & Co. is good. Humphrey, Tutt & Terry can not be held as guarantors of the payment of the notes or bills in the exception mentioned. It does not appear that they collected these notes or any part thereof, nor does it appear that they, or any of them, were lost to Ruffner, Donnally & Co., by the negligence of Humphrey, Tutt & Terry. But if anything appears in relation to them it is that they were not collected.

1874.
June Term.

Ruffner,
Donnally & Co.,
v.
Hewitt,
Kercheval & Co.

I think the *fourth* exception of Ruffner, Donnally & Co. is not well taken. Humphrey, Tutt & Terry are charged with this item in the $11,734.20 of amount realized from salt in the country shipped by Hewitt, Kercheval & Co.

The *fifth* exception of Ruffner, Donnally & Co., so far as relates to the amount allowed on the seven thousand seven hundred and sixty-eight barrels of salt and the four thousand three hundred and six barrels for reasons hereinbefore stated is not well taken.

So much of said exception five, as relates to the residue of the said six thousand six hundred and sixty barrels of salt, after deducting the four thousand three hundred and six barrels, which is called two thousand five hundred barrels in said exception, but which is in fact two thousand three hundred and fifty-four barrels. I will further consider, when I dispose of the questions arising upon the face of so much of the decree appealed from as refers the cause as between Ruffner, Donnally & Co. and Humphrey, Tutt & Terry to Wm. H. Hogeman as special commissioner for an account and directs the basis on which he shall make the same.

The defendants Humphrey, Tutt & Terry also filed exceptions to the report of commissioner Laidley, to exhibits B. and C. thereof, which exceptions I think are mostly though perhaps not altogether, well taken. The charge of six thousand six hundred and sixty barrels of salt $2.37 per barrel is not authorized by the evidence;

1874.
June Term.

Ruffner,
Donnally & Co.
v.
Hewitt,
Kercheval & Co.

and so of the charge of seven thousand seven hundred and seventy barrels at $2.37 per barrel; and so of the charge of $22,341.21 for sundry notes received of John J. Roe & Co. This charge should be less according to my computation. It is clear, to my mind, that Humphrey, Tutt & Terry should not be be charged with the $1,831.63 paid by W. H. Rice to Hewitt, Kercheval & Co. on the shipments of salt made by them to country agents which were turned over to Humphrey, Tutt & Terry. It is proven by the evidence of Cochran that this money was paid by Rice to Hewitt, Kercheval & Co. and by them accounted for to Ruffner, Donnally & Co. And if Humphrey, Tutt & Terry are charged with the whole amount of the salt they should be credited for that amount. The charge for cooperage should be allowed under the evidence; also the charge for weighing salt and also labor, I think, should be allowed, under the proof in the cause; also the charge for rent and also proper commissions. I think the weighing and labor were extraordinary expenses necessarily and reasonably incurred about the sale of this salt. It was clearly contemplated that the sales would be made by lick weight, but the condition of the salt, its age and deficiency in actual weight, I have no doubt, in some cases, made it necessary to weigh the salt in order to be able to sell it, and that in such cases it was to the interest of Ruffner, Donnally & Co. at that time, that it should be weighed.

I have said nothing of the drayage charged by Humphrey, Tutt & Terry, on salt sold in the city, but the charge for drayage on salt sold from place of storage, ought not to be allowed in addition to commission.

Humphrey, Tutt & Terry should be charged for the four thousand three hundred and six barrels of salt sold in St. Louis, the amount received for it, deducting proper commissions and other charges and expenses, above indicated. I do not think they should be allowed more than seventeen cents commission on the barrel for this four thousand three hundred and six barrels, as the dray-

age from line to storage had been paid. For the seven thousand seven hundred and seventy-eight barrels of salt, shipped by Hewitt, 'Kercheval & Co., to country agents, Humphrey, Tutt & Terry should be charged with what they received thereon, and be allowed reasonable compensation for collecting the same,—they should not be allowed commission on the whole of this salt, as they neither forwarded it to the country agents, nor collected the whole of it,—the amount that was collected by Hewitt, Kercheval & Co. Humphrey, Tutt & Terry should not be allowed commission for collecting, nor should they be allowed commission on the other part which has not been collected. Nor should they be allowed as much commission per barrel for collecting from the said country agents, as if they had forwarded the salt. Humphrey, Tutt & Terry should not be charged, under the circumstances, for any greater amount than they received upon the notes and bills they received from John J. Roe & 'Co., for Ruffner, Donnally & Co. They should not be charged for the said notes or bills which they did not collect. The court may direct the disposition to be made of the said uncollected notes and bills. So far as the record shows, Humphrey, Tutt & Terry did not make frequent returns of sales and collections, as had been the custom of the former agents and factors who had the agency any considerable time. The only account in the record which was returned to Ruffner, Donnally & Co., is the account filed with the depositions of John B. Smith and John P. Smith, and this account or a copy of it was returned to the agent, John B. Smith, at Louisville, some time in the year 1858. The exact time of its return does not appear. It also appears, that when this account was returned to Smith, he objected to it. Afterwards a copy of the same account was returned to the agent of Ruffner, Donnally & Co., at Kanawha, and settlement and payment to Humphrey, Tutt & Terry, required according to the face of that account, but the ac-

1874.
June Term.

Ruffner,
Donnally & Co.,
v.
Hewitt,
Kercheval & Co.

count was then objected to, also. This is an account current, and contains an account of sales of salt, &c., but it does not state the number of barrels sold, or the price per barrel or bushel; nor does it show the number of barrels unsold. It purports to state the amount collected on consignments to country agents, by Hewitt, Kercheval & Co., and the names of the persons from whom collected, but does not state the number of barrels sold by them, &c., and, it is, in other respects, objectionable,—it makes the balance due to Humphrey, Tutt & Terry, $32,976.59, or thereabouts. Exhibit A, filed with Humphrey, Tutt & Terry's answer, makes the balance due them, the 1st January, 1859, $26,845.93. This is, also, an account current, and, it is claimed in the answer, to be, substantially, the same as the other account. Exhibit A, however, is not the same as the other account in some material respects. Exhibit A was never presented to Ruffner, Donnally & Co., or their agents. With the answer is also filed a full and satisfactory statement of the collections, from country agents, for salt shipped by Hewitt, Kercheval & Co., and the number of barrels sold by each of them. This statement is marked Exhibit E. They, also, file with their answer, a satisfactory return of sales of the four thousand three hundred and six barrels of salt, sold by them. They, also, file with their answer, Exhibit C, purporting to be a memorandum, showing number of barrels of Kanawha salt belonging to Ruffner, Donnally & Co., shipped to the country by Humphrey, Tutt & Terry, and the persons and places shipped to. Neither said Exhibits A, B or C, appears to have been presented or returned to Ruffner, Donnally & Co.

Sometime in the year 1858 and after the account had been returned to John B. Smith, and also to Ruffner, Donnally & Co.'s agent at Kanawha, and after the same was objected to, Mr. Broadwell, one of the firm of Humphrey, Tutt & Terry, withdrew the account from both places, with the view of making changes and corrections, and

1874.
June Term.

Ruffner,
Donnally & Co.,
v.
Hewitt,
Kercheval & Co.

shortly afterwards, he returned to said Smith a copy of the account so withdrawn. It will be observed that the accounts of Humphrey, Tutt & Terry, under the circumstances above stated, do not occupy the position or have the force of the accounts of Hewitt, Roe & Co., Hewitt, Kercheval & Co., or John J. Roe & Co., or either as an account stated and settled. The greatest weight that can be given to it, if that, is that it will be taken as *prima facie* true, in the absence of other evidence, disproving it in whole or part. Plaintiffs, in their bill, charge that Humphrey, Tutt & Terry received, among other things, salt belonging to them, for which they have not accounted, and for which they refuse to account. They are called on to account for the salt, &c., and it was their duty as the factors of Ruffner, Donnally & Co. to make a full and explicit account of the same in every respect. In their answer, they state of the said six thousand six hundred and sixty barrels of salt turned to over them by John J. Roe & Co., in St. Louis, they sold four thousand and thirty-six barrels, a full account and report of which is given in said Exhibit B, at the aggregate price of $6,825.01, and that, deducting charges, the net amount, with interest to 31st December, 1858, is $4,675.75; that "of the remainder of said six thousand six hundred and sixty barrels of salt, one thousand seven hundred and seventy barrels could not be sold in the city, and were sent to the country to divers persons for sale, a correct list of whom, with the quantity in their hands, respectively, is shown by list marked C, leaving five hundred and eighty-four barrels of salt short;" that this loss of said five hundred and eighty-four barrels of salt was unavoidable from the bad condition of the barrels and salt when delivered to them, and from other causes beyond their control. From this statement, taking it as true, we would conclude that the one thousand seven hundred and seventy barrels of salt was all of the six thousand six hundred and sixty barrels that could not be sold, and was not sold in St. Louis by Humphrey, Tutt & Terry, and

that the six thousand six hundred and sixty barrels were actually short five hundred and eighty-four barrels from the bad condition of the barrels and salt when delivered to them, and from other causes beyond their control and that in fact the one thousand seven hundred seventy barrels of salt were all that were shipped by them from St. Louis. I am unable to give the statement any other construction from the language employed. Humphrey Tutt & Terry took and filed the deposition of Lewis Ruffner, Jr., who was clerk for Humphrey, Tutt & Terry and he states the amount of salt consigned to the country by Humphrey, Tutt & Terry was two thousand one hundred and seventy barrels, and that three hundred and fifty barrels of the salt were sunk in the Missouri river, on the "New St. Paul," while being shipped by Humphrey, Tutt & Terry to the country, and that fifty barrels were shipped by Humphrey, Tutt & Terry to one R. S. Mize, and that one hundred and seventy-five or two hundred barrels were used by Humphrey, Tutt & Terry in filling ' up ' barrels that were deficient. Metcalf, another witness for Humphrey, Tutt & Terry, says that on his trip or trips to dispose of the salt shipped to the country by Humphrey, Tutt & Terry, he learned that R. S. Mize, of Blue Mills, Missouri, who had fifty barrels, was insolvent. This three hundred and fifty barrels sunk in the river, and the fifty barrels shipped to Mize is no part of the one thousand seven hundred and seventy barrels aforesaid. It is clear, therefore, that the one thousand seven hundred and seventy barrels is not all the six thousand six hundred and sixty barrels of salt that was shipped from St. Louis, but that four hundred additional barrels thereof were shipped by Humphrey, Tutt & Terry. Metcalf also states that he called at Nauvoo to see J. J. Newton to collect for fifty barrels, and he could find no such man or salt, and that he called at Wyandotte, Kansas Territory, to collect of O. P. Beading for fifty barrels and learned that he was dead and insolvent, and found no salt there. Metcalf,

in his deposition and exhibit X, filed therewith as part of his deposition, shows that he sold and settled for nine hundred and forty-three barrels of the salt shipped to the country for the sum of $514.05, after paying freight and charges of the country agents for which he accounted to Humphrey, Tutt & Terry. This nine hundred and forty-three barrels was evidently a part of the one thousand seven hundred and seventy. Metcalf further states that he made these sales or settlements in the years of 1858 and 1859, but he does not state the time of either year. Humphrey, Tutt & Terry do not, in their answer, give any account of the sale of any part of the one thousand seven hundred and seventy barrels of salt. Their answer was sworn to the 20th of May, 1859, and was filed 22d June, 1859.

It does not appear from the evidence that more than the nine hundred and forty-three barrels of the one thousand seven hundred and seventy barrels sent to the country has been sold by the persons to whom shipped, or if sold, paid for by the persons in the country to whom it was so shipped. The three hundred and fifty barrels of salt sunk in the Missouri river and the fifty barrels shipped to Mize together with the said one thousand seven hundred and seventy barrels makes two thousand one hundred and seventy barrels of salt testified to by Ruffner, Jr. Said Lewis Ruffner Jr., in his deposition also testifies that at the time said salt was shipped the Missouri river was low, and freights high, and that the shipment of the salt was ill-advised; and his deposition shows that the freight on the salt, so shipped, for shipping it to the country was from seventy cents up to as high as $2 per barrel and that the salt was shipped in July and August, 1857. The commissioner has not charged Humphrey, Tutt & Terry with the said $514.05 or any part thereof, in the account or statement as presented by him with his report as to the accounts of Humphrey, Tutt & Terry, or with any part of the two thousand three hundred and fifty-four barrels of salt, residue of the six hun-

1874.
June Term.

Ruffner,
Donnally & Co.,
v.
Hewitt,
Kercheval & Co.

dred and sixty barrels after deducting the four thousand three hundred and six barrels sold. It does not appear that Humphrey, Tutt & Terry received instructions from Ruffner, Donnally & Co., or their agents to ship any part of the six thousand six hundred and sixty barrels of salt to the country; nor does it appear that the shipping of it was in accordance with the general usage of trade, or the usage of the trade between Humphrey, Tutt & Terry and Ruffner, Donnally & Co.; nor does it appear, that the disposition of salt, or any part of it, other than by sale at St. Louis, was committed to the judgment or discretion of Humphrey, Tutt & Terry. I do not think that authority is found in Exhibits one and seven filed by Humphrey, Tutt & Terry with their answer for shipping the salt to the country. Exhibit No. 1 is a letter from said Smith to Lewis Ruffner, dated 1st January, 1857, to which I have before referred, in which Smith directs Ruffner to urge John J. Roe & Co., to close out Ruffner, Donnally & Co's., salt in the city in the spring before new salt will go forward. And exhibit seven is dated 12th March, 1857, and on the subject of the old salt says: "As to the old salt we wish it sold for the best price you can, and, if necessary, to have it put in order to do so." This letter is directed to Humphrey, Tutt & Terry and is signed "Ruffner, Hale & Co.,

JOHN B. SMITH, Agent."

I am unable to discover from the record that Humphrey, Tutt & Terry ever informed Ruffner, Donnally & Co. as to what disposition they had made of the two thousand one hundred and seventy barrels of salt shipped by them to the country or any part thereof prior to the filing of their answer. There has unquestionably been a considerable loss by the shipment of the two thousand one hundred and seventy barrels of salt, as aforesaid, by Humphrey, Tutt & Terry and it must be determined who should under the circumstances sustain that loss, Humphrey, Tutt & Terry or Ruffner, Donnally & Co. A factor is bound not only to good faith but to

reasonable diligence. It is not sufficient that he has been guilty of no fraud, or of no such gross negligence, as would carry with it the insignia of fraud. He is required to act with reasonable care and prudence in his employment. Story on Agency sections 183, 186. Whether the proper degree of diligence and skill, which the law requires of agents in performing their duties, has been applied in a particular trade, employment or business, is for the most part a matter of fact, open for inquiry, and, sometimes involving points of great delicacy and difficulty. The general usages of trade, the common habits of the particular business, and the special mode of dealing between the principal and agent, will often explain and expound the duties required of the agent, as to diligence and skill. As a general rule in the absence of instructions if there be a known usage of trade, or a mode of transacting business, applicable to the particular agency or analogous to it, in such a case it will be the duty of the agent to conform to it; and any departure from it, not required by necessity, will be at the peril of the agent, and involve him in full responsibility for any loss occasioned thereby. Id. sections 185, 199. It is the duty of an agent where the business, in which he is employed, admits of it, or requires him to keep regular accounts of all his transactions on behalf of his principal, not only of his payments and disbursments, but also of his receipts; and to render such accounts to his principal at all reasonable times, without any suppression, concealment or overcharge. Id. section 203. If the agent unnecessarily exceeds his commission, or risks the property of his principal he thereby renders himself responsible to his principal for all losses and damage, which are the natural consequences of his act. And it will constitute no defence for him, that he intended the act to be a benefit to the principal. Id. section 192. It does not appear from the evidence that the salt shipped could not have been sold in St. Louis. So far as the evidence proves anything upon this subject,

1874.
June Term.

Ruffner,
Donnally & Co.,
v.
Hewitt,
Kercheval & Co.

it proves that the salt most probably could have been sold in St. Louis at considerable more per barrel than was realized from the said nine hundred and forty-three barrels. The salt was not in the hands of Humphrey, Tutt & Terry more than six months before they commenced the shipment, and when they commenced they shipped all that had not been sold or used in filling, within two months.

The counsel for Humphrey, Tutt & Terry in their exceptions suggest that account as shown in exhibit A. be corrected by the court as follows, viz: that Ruffner, Donnally & Co. be charged with the $25,482.98, as of September, 1860, as stated and then credited with $514.03, the amount received for the said nine hundred and forty-three barrels and also credited with $877, the net value of eight hundred and seventy-seven barrels of the salt unsold at $1. per barrel. This would make up the one thousand seven hundred and seventy barrels but leaves out the three hundred and fifty sunk and the fifty shipped to R. S. Mize, as shown on pages five hundred and thirty-eight, thirty-nine and forty of the printed record. I find an account headed "Final Settlement" "Messrs. Ruffner, Donnally & Co. In account and interest with Humphrey, Tutt & Terry." This purports to be a final account current between Ruffner, Donnally & Co. and Humphrey, Tutt & Terry, and ascertains the balance due from Ruffner, Donnally & Co. to Humphrey, Tutt & Terry on the 1st day of January, 1859, to be $19,08.46 and it is certified by Geo. D. Humphrey, as a correct and final settlement of the account of Ruffner, Donnally & Co. in account and interest with Humphrey, Tutt & Terry up to and closing with the 1st of January, 1859, and the account purports to have been sworn to before a notary public. In this account current Humphrey, Tutt & Terry are charged with the net proceeds of seven thousand seven hundred and sixty-eight barrels as per sales rendered $11,734.20; also net proceeds of sale of four thousand three hundred and six as per sales ren-

dered $4,675.78; also with net proceeds of one thousand seven hundred and seventy barrels of salt at $1.58 per barrel, $2,796.00. The three hundred and fifty barrels sunk in the river are stated and also two hundred and twenty-six barrels short and to refill are mentioned, but no charge to Humphrey, Tutt & Terry is made therefor. Immediately thereunder is written fourteen thousand four hundred and thirty barrels accounted for.

1874.
June Term.

Ruffner,
Donnally & Co.,
v.
Hewitt,
Kercheval & Co.

There is nothing in the record that indicates when this account was filed, nor is it stated by whom it was filed. Of it the record says: "the following is a copy of the final settlement of Humphrey, Tutt & Terry's account with Ruffner, Donnally & Co. and filed with the papers of this cause." It purports to have been sworn to before a notary public on the 12th of December, 1868, and the decree appealed from was rendered the 6th of July, 1869. No exceptions are filed to this account. I do not attach much importance to this account; nor do I base my conclusion upon it. I simply refer to it as being a part of the record as presented here. The record is made up without regard to system and is in a mixed and confused condition, and as a consequence it is exceedingly difficult to ascertain what part of the papers were filed before the decree appealed from and what part afterwards, as well as to arrive at the facts of the case.

After much consideration of the facts and peculiar circumstances appearing in the case, I have arrived at the conclusion that Humphrey, Tutt & Terry should be charged in the settlement of their account with the value of the two thousand one hundred and seventy barrels of salt at St. Louis, of Ruffner, Donnally & Co., shipped by Humphrey, Tutt & Terry, from St. Louis, in July and August, 1857—I mean its value in the condition it then was, as near as may be. Humphrey, Tutt & Terry should not be allowed drayage for taking this salt from storage to place of shipment. This would still leave one hundred and fifty-four barrels of the six thousand

83

six hundred and sixty uncharged to Humphrey, Tutt & Terry. This amount so left, I think, from the evidence, should not be charged to them, as that amount, at least, seems to have been used for filling up other barrels that were deficient. And I am further of the opinion that the circuit court erred in overruling so much of said fifth exception of plaintiff to the commissioner's report as relates to the residue of the said six thousand six hundred and sixty barrels of salt after deducting the said four thousand three hundred and six barrels sold, being of the opinion that the commissioner ought to have charged Humphrey, Tutt & Terry in their account with the value of two thousand one hundred and seventy barrels thereof

I am further of the opinion that the court, in that part of its decree which refers the cause to a special commissioner and prescribes the basis on which he shall make inquiry and report, should have directed the commissioner to charge Humphrey, Tutt & Terry in the account with the value of said two thousand one hundred and seventy barrels of salt at St. Louis, in the condition it was when shipped therefrom in July and August, 1857, as nearly as may be.

All questions not herein passed upon, which arise or may arise, in this cause, hereafter, are left open, for consideration and adjudication.

For these reasons the decree rendered in this cause by the circuit of Kanawha county, on the 6th day of July, 1869, must be reversed and annulled and the appellants recover against the appellees, Robert M. V. Kercheval surviving partner of Hewitt, Kercheval & Co., and the appellees composing the firm of Humphrey, Tutt & Terry, their costs expended about the prosecution of this appeal.

Hoffman and Moore, Judges, concurred.

Absent, Paull, Judge.

The following is the decree entered in this Court.

1874.
June Term.

Ruffner,
Donnally & Co.,
v.
Hewitt,
Kercheval & Co

This Court proceeding to render such decree in the cause as the said circuit court shall have rendered, upon the papers, proceedings theretofore had, the depositions and other papers filed, the reports and accounts of commissioner A. T. Laidley and the papers and other evidences filed therewith, the exceptions of Hewitt, Roe & Co., of Hewitt, Kercheval & Co., John J. Roe & Co., Humphrey, Tutt & Terry, defendants, and the exceptions of the plaintiffs Ruffner, Donnally & Co., to said reports read by said circuit court—it is adjudged, ordered and decreed that the exceptions of the said Hewitt, Roe & Co., Hewitt, Kercheval & Co., and John J. Roe Co., and each of them, to said reports of said commissioner Laidley, and each part thereof, be sustained, and that the plaintiffs' bill, as to them, and each of them, be dismissed, and that said Robert M. V. Kercheval surviving partner of the said firm of Hewitt, Kercheval & Co., John J. Roe & Henry J. Moore composing the firm of John J. Roe & Co., recover against the plaintiffs their costs about their defence of this cause expended, and that the exceptions of the plaintiffs filed to said commissioner's report, and each of them, except No. 5, be overruled and that said exception No. 5 as to two thousand one hundred and seventy barrels of the salt therein mentioned be sustained. And that this cause, as to the plaintiffs and the said firm of Humphrey, Tutt & Terry and the other defendants as to whom the plaintiffs' bill is not herein dismissed, be remanded to the said circuit court of the county of Kanawha with instructions to said court to refer the cause as between Ruffner, Donnally & Co., and the defendants Humphrey, Tutt & Terry to a commissioner to ascertain, settle, state and report the accounts between Ruffner, Donnally & Co., and the defendants Humphrey Tutt & Terry upon, and according, to the principles and matters settled and ascertained in this opinion, so far as relates to them, and otherwise as may

1874.
June Term.

Ruffner,
Donnally & Co.,
v.
Hewitt,
Kercheval & Co.

be, or is just and in accordance with the rules and principles of courts of equity, and that said circuit court further proceed in said cause, so far as the same remains undetermined, or any questions arising therein, according to the principles, rules and regulations of courts of equity in such cases.

DECREE REVERSED AND SUIT REMANDED.